# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### September 11, 2001 Session

## STATE OF TENNESSEE v. MARCUS FITZGERALD

**Direct Appeal from the Criminal Court for Shelby County**
**No. 99-12091-93     Chris Craft, Judge**

---

**No. W2000-02669-CCA-R3-CD  - Filed January 15, 2002**

---

Defendant, Marcus Fitzgerald, was convicted by a Shelby County jury of resisting arrest, aggravated rape, and rape.  Defendant appeals his convictions and presents the following issues for review: (1) whether the trial court erred in granting the State's motion to consolidate; (2) whether the trial court erred in denying Defendant's motion to suppress a pre-trial identification; (3) whether the trial court erred by offering an advisory opinion on a stipulation; (4) whether Defendant was unfairly prejudiced by the trial court's comments to the jury after extraneous contact with a third party; and (5) whether the trial court erred by admitting mug shots of Defendant taken a few days after his arrest.  After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, and ROBERT W. WEDEMEYER, JJ., joined.

Mary C. Jermann, Memphis, Tennessee, for the appellant, Marcus Fitzgerald.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; William L. Gibbons, District Attorney General; and James Lammey, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

Ms. Louise Olden, the first of two victims, was raped on Elder Street, on June 22, 1999.  At trial, Ms. Olden testified that at approximately 12:30 a.m., she was walking home when her assailant approached her.  Ms. Olden testified that she had seen the assailant around the neighborhood for approximately two months.  He asked her for a cigarette.  She answered that she did not have one and continued home.  Suddenly, she heard a noise behind her.  Before she could turn around, her

1

assailant grabbed her around the neck and began choking her. After forcing her into a vacant house located at 246 Elder Street, she was able to recognize her assailant's exposed face. The assailant forced her into the home's storage room, while punching her in the mouth and side. Then he pulled out a knife and pushed her up against a freezer. When she pled for her life, the assailant laughed and called her a "bitch." He told her that she would not get hurt if she "shut up" and did exactly what he said. Ms. Olden testified that the assailant forced her to perform oral sex and raped her. Afterwards, he let her go. When the assailant walked away, Ms. Olden went outside and was picked up and driven home by her neighbor, Anthony Todd. She immediately reported the rape to police. Ms. Olden suffered cuts from the broken glass around the vacant house where she was raped, as well as pain in her neck, side, and mouth. Ms. Olden testified that a few days after the rape, she saw Defendant off in the distance and attempted to call the police. However, Defendant left before she was able to have him arrested. Ms. Olden also positively identified Defendant as her assailant, at the preliminary hearing where Defendant's booking number was read into the record. When asked to identify Defendant at the jury trial on June 28, 2000, Ms. Olden initially stated "I don't see him. He seem to change or something." After she was given more time to look around the courtroom, she pointed at Defendant and stated "that man right there look just like that man."

The day after Ms. Olden's rape, Debra Pruitt, the second victim, was visiting Anthony Todd at his home located at 290 Elder Street. Ms. Pruitt testified at trial that at approximately 3:45 a.m., she went outside to smoke a cigarette and saw Defendant walking down the street. Ms. Pruitt knew Defendant as "Bubba," her next door neighbor. Ms. Pruitt testified that she had known "Bubba" all his life. Bubba approached her and made small talk on the street while she finished her cigarette. She then left to walk home. Suddenly, she heard a noise behind her. As she turned around, she saw Defendant grab her around the neck. He began choking her and told her, "shut up bitch, you know what I want." They began to struggle as he attempted to drag her into the vacant house at 294 Elder Street. Defendant warned her that if she kept resisting, he would cut her throat and "she wouldn't live to see another day." Although Ms. Pruitt did not see a weapon, she testified that Defendant must have had something sharp in his hand because it stuck her in the chest. After he raped her, he let her go. She ran back to Mr. Todd's home and reported the rape to police. At the jury trial, Ms. Pruitt positively identified Defendant as her assailant.

Officer Byron Johnson, the first officer on the scene, testified at trial that he took Ms. Pruitt's statement and the suspect's identification. The police immediately canvassed the neighborhood, but were unable to locate Defendant. The houses where the two rapes occurred were located five houses apart.

At trial, Anthony Todd corroborated Ms. Pruitt's testimony and testified that within minutes of the attack, Ms. Pruitt told him that she was raped by Defendant. He also testified that he picked up Ms. Olden on June 22, 1999, but that they did not talk about her assault.

On June 26, 2000, Ms. Pruitt saw Defendant working at the Mitchell Road Tire Shop on the corner of Mitchell and Daggett. She went to a home a short distance away and called the police. While there, Ms. Pruitt spoke briefly to Ms. Olden, and disclosed to Ms. Olden that she called the

police because Defendant raped her. She waited until the police arrived and then left. Shortly thereafter, the police called Ms. Olden, and transported her to the tire shop where Defendant was detained. Ms. Olden positively identified Defendant as the person who raped her.

Officer Derrick Jennings was one of the first officers on the scene to detain Defendant at the Mitchell Road Tire Shop. He, along with Officer Johnson, talked to Defendant who was at first "wild and real uncooperative, irate and hostile, " but who finally agreed to cooperate with police. They placed Defendant in the back of the police car. They explained to him that they were investigating a rape and that he could leave if the victim failed to make a positive identification. After Ms. Olden identified Defendant, they attempted to make a formal arrest. However, when they tried to handcuff Defendant he began swinging, punching, kicking and trying to force his way out of the car. After a struggle, they finally subdued him and forced him to the ground to handcuff him. Officer Jennings identified Defendant in court and in a mug shot that was taken the day after Defendant was arrested. He testified that Defendant's appearance changed between the time of arrest and the time of the trial. Officer Jennings testified that on the date of the arrest, Defendant was wild, dirty, and unprofessional, and that Defendant appeared totally different at trial.

Defendant did not offer any proof. While notice of an alibi defense in the Pruitt case was mentioned at the pretrial hearing on the motion to consolidate, it was not presented at trial. At the conclusion of the proof, the jury convicted Defendant of resisting arrest, aggravated rape in Ms. Olden's case, and the lesser-included offense of rape in Ms. Pruitt's case. Defendant was originally indicted for the aggravated rape of Ms. Pruitt.

**ANALYSIS**

I.     Motion to Consolidate

Defendant argues that the trial court committed reversible error by refusing to sever the offenses and by granting the State's motion to consolidate the offenses for trial. Specifically, Defendant argues that it was error for the court to consolidate the two rape offenses for trial.

The State filed a motion to consolidate for trial the two aggravated rape offenses and the charge of resisting arrest, which were contained in multiple indictments. However, in the motion to consolidate, the State essentially argued only for consolidation of the two aggravated rape offenses. Likewise, the substance of the arguments presented at the pre-trial hearing centered on the consolidation of the two aggravated rape offenses. At the pre-trial hearing, Judge Blackett, Division 4, ordered consolidation of the two aggravated rape offenses. However, the court failed to mention the charge of resisting arrest. The cases were tried a day later in Division 8, with Judge Craft presiding. At the beginning of trial, Defendant failed to object to the consolidation of resisting arrest with the two aggravated rape charges. Failure to object or take whatever action is reasonably available to prevent or nullify the harmful effect or error constitutes waiver of the issue on appeal. Tenn. R. App. P. 36(a). Therefore, we will address the sole issue of whether it was error for the trial court to consolidate the two aggravated rape offenses for trial.

3

At the pre-trial hearing, the State argued that the trial court should consolidate the two aggravated rape offenses pursuant to Rule 8(b) of the Tennessee Rules of Criminal Procedure. Defendant objected. Rule 8(b) permits consolidation when the offenses are part of a common scheme or plan, or if they are of "the same or similar character." Tenn. R. Crim. P. 8(b). When the defendant objects, the court must consider the consolidation motion under the severance provisions of Rule 14(b)(1) of the Tennessee Rules of Criminal Procedure. See Spicer, 12 S.W.3d 438, 443 (Tenn. 2000). Under Rule 14(b)(1), a defendant has an absolute right to sever offenses unless the evidence proves that the offenses were part of a common scheme or plan, *and* that evidence of *each offense* would be admissible in the trial of the *other offenses*. Tenn. R. Crim. P. 14(b)(1) (emphasis added).

The State argued that the court should deny Defendant's request to sever the offenses because both prongs of Rule 14(b)(1) were satisfied. In accordance with Rule 14(b)(1), the State claimed that both aggravated rape offenses were a part of a common scheme or plan and that the evidence of each aggravated rape would be admissible in the trial of the other aggravated rape offense to prove identity. Tenn. R. Crim. P. 14(b)(1). The court agreed, denied severance and granted the State's motion to consolidate the aggravated rape charges for trial.

We must determine whether the court committed reversible error by failing to sever the offenses. See Spicer, 12 S.W.3d at 438; State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999). Our determination of whether the trial court erred is restricted to the evidence produced at the motion to consolidate. A motion to consolidate is a pre-trial motion and evidence to support or negate the consolidation should be presented in a pre-trial hearing. See Spicer, 12 S.W.3d at 445. "Further, because the trial court's decision of whether to consolidate offenses is determined from the evidence presented at the hearing, appellate courts should only look to that evidence, along with the trial court's findings of fact and conclusions of law, to determine whether the trial court abused its discretion by improperly joining the offenses." Id.

We review the trial court's decision to deny severance for an abuse of discretion. See Moore, 6 S.W.3d at 238; State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999). After a review of the record and the law, we find that the trial court erred by denying the severance at the pre-trial hearing on the motion to consolidate. It was error to grant the consolidation because the evidence at the pre-trial hearing failed to show that each aggravated rape offense would be admissible in the trial of the other offense. Tenn. R. Crim. P. 14(b)(1). However, we hold that this was harmless error under the particular facts of this case.

a.      Common Scheme or Plan

Defendant argues that it was error to deny the severance because the State failed to offer evidence at the pre-trial hearing that proved both aggravated rapes were part of a common scheme or plan. We disagree.

4

In order to deny severance and consolidate offenses, the State must prove that the offenses were a part of a common scheme or plan in one of three ways. See Spicer, 12 S.W.3d at 446; Moore, 6 S.W.3d at 240; Shirley, 6 S.W.3d at 248. The offenses must reveal either a distinctive design or signature, a larger continuing plan or conspiracy, or be a part of the same transaction. See id.

At the pre-trial hearing the State argued that evidence of the offenses revealed a distinctive design or signature. Multiple offenses reveal a distinctive design when the "modus operandi employed [is] so unique and distinctive as to be like a signature." Moore, 6 S.W.3d at 239; Shirley, 6 S.W.3d at 248. Thus, "reasonable men can conclude that it would not likely be employed by different persons." Moore, 6 S.W.3d at 240-41 (quoting Harris v. State, 189 Tenn. 635, 644, 227 S.W.2d 8, 11 (Tenn. 1950).

We find that a common scheme or plan was established because the evidence revealed that the two aggravated rapes were "so distinctive as to be like a signature." Neither Defendant, nor the State offered any testimony at the pre-trial hearing. However, the State recited the following to show the common facts in both offenses:

> Both involve black females; both victims knew the perpetrator as "Bubba" from around the neighborhood; the perpetrator did not conceal his face either time; in both offenses the perpetrator made small talk before the attack; both victims were grabbed off the street; both victims were grabbed from behind; both were grabbed around the neck and choked; both victims were threatened with a knife; both victims were called "bitch" by the perpetrator; both victims were dragged into a vacant home on the same street, although the homes were different; both victims lived in the same neighborhood; the crimes occurred within twenty-four hours of each other; both victims were released afterwards.

The trial court found that a common scheme or plan existed "based on the testimony and the arguments that have been made by counsel." We concur with the trial court's finding. In order to find a common scheme or plan, the court may consider the specific facts recited as evidence as well as the State's argument at the pre-trial hearing. See Spicer, 12 S.W.3d at 445. The trial court properly found that a common scheme or plan existed.

Defendant further challenges the court's findings that a common scheme existed because the testimony at trial did not support the facts recited at the pre-trial hearing, i.e., the record contained no proof that he used a knife to rape both victims. However, the record reveals that at trial, circumstantial evidence showed that Defendant threatened Ms. Pruitt with a knife, as presented in the pre-trial hearing. Ms. Pruitt testified that Defendant threatened to cut her throat. She also testified that she felt a "stick" in her chest from an object held in Defendant's hand. The facts recited at the pre-trial hearing were not inconsistent with the testimony at trial.

5

b.      Evidence of One Offense Admissible in Trial of Other Offense

We now turn to the second requirement set forth by Rule 14(b)(1) of the Tennessee Rules of Criminal Procedure, i.e., whether in both cases, the evidence of each separate offense would be admissible in the trial of the other offense. Defendant argues that the State failed to satisfy the second prong because evidence of each aggravated rape offense would not have been admissible in the trial of the other aggravated rape offense. We agree.

Although the evidence revealed that the aggravated rapes were signature crimes as part of a common scheme or plan, the key question is one of evidentiary relevance. See Spicer, 12 S.W.3d at 445 (quoting Moore, 6 S.W.3d at 239). Therefore, the primary issue in a severance case is whether the evidence of "each offense is relevant to some material issue in the trial of all the other offenses." Id.

Admissibility of a separate offense under the second prong of Rule 14(b)(1), is determined by Rule 404(b) of the Tennessee Rules of Evidence. See State v. Hoyt, 928 S.W.2d 935, 944 (Tenn. Crim. App. 1995) overruled on other grounds by Spicer 12 S.W.3d at 447. Case law has dictated that evidence of a separate offense is admissible on the material issue of either identity, guilty knowledge, intent, motive, to rebut a defense of mistake or accident, or to establish some other relevant issue. See Moore, 6 S.W.3d at 239 (citing State v. Hallock, 875 S.W.2d 285 (Tenn. Crim. App. 1993)). However, this evidence is only admissible after a trial court (1) holds a jury-out hearing on the evidence; (2) determines that a material issue exists, other than conduct conforming with a character trait; and (3) finds that probative value outweighs unfair prejudice. Tenn. R. Evid. 404(b); see also Hoyt, 928 S.W.2d at 944. We must examine both offenses to determine whether in each case, the evidence presented at the pre-trial hearing on each offense was admissible in the trial of the other offense on a material issue. Tenn. R. Crim. P. 14(b)(1); See Spicer, 12 S.W.3d at 445.

At the pre-trial hearing, the State argued that identity would be the main issue in the trial of both offenses. Evidence that a defendant committed another crime can be used to prove his identity as the perpetrator of the crime on trial. See Bunch v. State, 605 S.W.2d at 230. In order to prove identity, the modus operandi must be substantially identical such that proof that the defendant committed the other crime tends to establish that he also committed the offense at issue. See id. However, the State failed to prove, through evidence offered at the pre-trial hearing, that each aggravated rape offense would be admissible in the trial of the other aggravated rape offense to prove the identity of Defendant.

The State did show that evidence of Ms. Olden's rape would be admissible in the case of Ms. Pruitt's rape on the material issue of identity. At the pre-trial hearing, the State argued that identity would be an issue in the Pruitt case because Defendant had given notice of an alibi defense in the Pruitt case. When a defendant offers evidence of an alibi defense, evidence of another similar crime would be admissible to show identity when there is "clear and convincing" proof that the defendant committed the other crime. See White v. State, 533 S.W.2d 735, 742-43 (Tenn. 1976); Caruthers

v. State, 219 Tenn. 21, 26-28, 406 S.W.2d 159, 161-62 (Tenn. 1966). By submitting an alibi defense, identity became the material issue in the Pruitt case and evidence that Defendant raped Ms. Olden would have been admissible to establish identity.

However, at the pre-trial hearing, the State failed to prove that if the cases were severed, evidence of Ms. Pruitt's aggravated rape would be admissible in the Olden case on a material issue. When arguing admissibility in the Olden case under Rule 404(b), the prosecutor merely stated, "I have already talked about common scheme or plan. I think I have met that prong . . . . " In Hallock, our Supreme Court rejected this reasoning because "the mere existence of a common scheme or plan is not a proper justification for admitting evidence of other crimes." Hallock, 875 S.W.2d at 292; see also Moore, 6 S.W.3d at 239 n. 5. "A proper finding of a common scheme or plan does not a fortiori compel the conclusion that all the offenses in the common scheme or plan are admissible." Id. at 240 n. 6. "Rather, admission of other crimes which tends to show a common scheme or plan is proper to show identity, guilty knowledge, intent, motive, to rebut a defense of mistake or accident, or to establish some other relevant issue." Id. at 239 n. 5 (quoting Hallock, 875 S.W.2d at 292). Contrary to the State's argument, at the time of the pre-trial hearing, the State failed to offer a valid reason why the proof of the aggravated rape of Ms. Pruitt would have been admissible in a separate trial for the aggravated rape of Ms. Olden.

Therefore, it was error for the trial court to refuse to sever the offenses for trial because the State failed to prove, through evidence at the pre-trial hearing, that with both offenses, each aggravated rape would be admissible in the trial of the other aggravated rape case.

c.      Harmless Error

Although the trial court erred in refusing to sever the offenses, we must now determine from the entire record whether this was reversible error. See Moore, 6 S.W.3d at 242. Whether to join or sever offenses is within the discretion of the trial court, State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999); State v. Hall, 976 S.W.2d 121, 146 (Tenn. 1998) (citing State v. Furlough, 797 S.W.2d 631, 642 (Tenn. Crim. App.1990)), and the defendant has the burden of proving that he was clearly prejudiced by the trial court's refusal to sever the offenses. See State v. Hodgkinson, 778 S.W.2d 54, 61 (Tenn. Crim. App.1989). "The line between harmless and prejudicial error is in direct proportion to the degree of the margin by which the proof exceeds the standard required to convict." Spicer v. State, 12 S.W.3d 438, 448 (Tenn. 2000); Shirley, 6 S.W.3d at 250; Moore, 6 S.W.3d at 242; Hallock, 875 S.W.2d at 292.

We recognize that Spicer requires that error in severing the offenses be determined by evidence offered at the pre-trial hearing. Spicer, 12 S.W.3d at 445. However, to determine harmless error, we must consider the evidence from the pre-trial hearing and the trial. See Moore, 6 S.W.3d at 242. Under this standard, we find that the denial of severance and consolidation of the offenses was harmless error because as the proof developed at trial, evidence of each offense would have become admissible in the trial of the other on the material issue of identity. At trial, Ms. Olden had trouble identifying Defendant. She merely pointed at Defendant and stated, "that man right there

7

look just like the man." We find that if the offenses were severed because of her weak identification during the trial, identity would have become a material issue in the case involving Ms. Olden. Therefore, evidence of Ms. Pruitt's aggravated rape would have been admissible to prove Defendant's identity as the perpetrator in Ms. Olden's case. In essence, the proof would have been the same if the aggravated rape cases had been severed.

In summary, we hold that the trial court erred by consolidating the cases, but that this error was harmless. The evidence developed at trial revealed that if the court had severed the offenses and conducted individual trials, evidence of each aggravated rape would have been admissible in the trial of the other to prove identity, a material issue. Therefore, Defendant is not entitled to relief on this issue.

II.      Motion to Suppress Identification

In his second assignment of error, Defendant argues that the trial court erred by denying his motion in limine to suppress Ms. Olden's identification testimony. Before testimony began in the trial, Defendant filed a motion in limine to suppress the identification testimony of one victim, Ms. Olden. The court denied the motion because Defendant failed to show that the identification was tainted by improper state action.

Defendant waived this issue by altering theories on appeal. A party may not litigate an issue on one ground in the trial court, abandon that ground post-trial, and assert a new basis or ground for his contention in this Court. See State v. McPherson, 882 S.W.2d 365, 373 (Tenn. Crim. App. 1994); State v. Matthews, 805 S.W.2d 776, 781 (Tenn. Crim. App. 1990). In the motion in limine, and at trial, Defendant alleged that Ms. Olden's identification of Defendant at the time of his arrest was inadmissible, and "impermissibly suggestive because the victim/witness conferred with the victim Debra Pruitt prior to making said identification." However, in the motion for a new trial, and on appeal, Defendant argues that the identification was tainted by impermissible state action because the police drove Ms. Olden to identify Defendant who was alone in the back of a police car. This issue is therefore waived.

Even if not waived, Defendant would not be entitled to relief on this issue. A "showup" occurs when the accused is presented one-on-one with a witness. See State v. Thomas, 780 S.W.2d 379, 383 n.1 (Tenn. Crim. App. 1989). It violates due process when it is (a) impermissibly suggestive, and (2) it permits a "substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

In this case, the identification procedure did not violate Defendant's due process rights. The evidence at trial revealed that Ms. Olden knew her attacker before the rape. Ms. Olden testified that before the rape occurred, she had seen Defendant around the neighborhood for a couple of months. Immediately after Defendant raped her, she reported it to the police. Ms. Olden also testified that she identified Defendant as the person who raped her prior to the "showup." Ms. Olden testified that a few days after the rape, she saw Defendant off in the distance and attempted to call the police, but

Defendant left before she was able to have him arrested. Then, four days after the rape occurred, she identified Defendant as "the one" who raped her while he was detained by police. There was no evidence that the officers influenced Ms. Olden's identification of Defendant. Furthermore, Ms. Olden's testimony that she knew her attacker and tried to have him arrested prior to the date of the arrest was proof that the "showup," was not impermissibly suggestive. Secondly, there is no proof that the "showup" caused a substantial likelihood of "irreparable misidentification." In this case, Defendant was not a stranger to his victim, Ms. Olden. On the contrary, Ms. Olden testified that she knew Defendant before she was raped. The "showup" procedure did not permit a substantial likelihood of "irreparable misidentification" when Ms. Olden had already identified Defendant as the person who raped her. Defendant is not entitled to relief on this issue.

III.    Advisory Opinion

In his next issue, Defendant contends that the trial court committed reversible error by offering an advisory opinion. Defendant argues that the trial court's comments coerced him into stipulating that Ms. Olden previously identified him at the preliminary hearing, in violation of his 5th amendment right against self-incrimination. U.S. Constit, amend. 5.

"It is not the duty or function of a trial court to require one of the parties to the litigation to stipulate with his adversary." State v. Ford, 725 S.W.2d 689 (Tenn. Crim. App. 1986). Appellate courts should not "render advisory opinions on questions which are premature and contingent and may never arise in the future." State v. Rogers, 703 S.W.2d 166, 169 (Tenn. Crim. App. 1985). Likewise, trial courts should not render similar "advisory opinions." However, we find that the judge's comments were not an "advisory opinion."

In light of Ms. Olden's tentative "looks like" identification during trial, the State sought to enter evidence of Ms. Olden's prior identification of Defendant at the preliminary hearing. The judge found that evidence of the prior identification was admissible on a material issue in the State's case as " a statement of identification of a person made after perceiving the person if the declarant testifies at the trial or hearing." Tenn. R. Evid. § 803(1.1). During a jury-out hearing, the judge and the attorneys discussed the best procedure for admitting the identification evidence. Defendant objected to the use of many procedures as being unduly prejudicial. One particular procedure involved admitting testimony of Defendant's booking number from the preliminary hearing and Defendant's booking number from his armband at trial. The State sought to admit this evidence to prove that Defendant was the same person that Ms. Olden previously identified at the preliminary hearing. Defendant objected and claimed that this would destroy the presumption of innocence by revealing to the jury that he was incarcerated. The court responded to Defendant's challenge by stating

> I'd rather not identify the Defendant's armband in court because then the jury would know that he's in jail . . . [I]f the probative value outweighs the prejudice, which it probably will, I may rule that that can be unless you all can work a way out of it . . . So, if you all could agree to that over the lunch break, it would really help me out . . . And so, I'd rather stay out of it.

In response to the court's ruling, Defendant chose to enter the following stipulation:

> The state of Tennessee and the defendant, Marcus Fitzgerald, by and through his attorney, Mary Jermann, agreed to the following stipulation for purposes of the trial on the above listed indictment numbers. The defendant on trial, Marcus Fitzgerald, was identified at an earlier hearing by the witness, Louise Olden, as the perpetrator.

After the stipulation was entered, the court stated, "And you've made a record, and I'm finding as a matter of fact that had you all not stipulated, I would have allowed the booking number to be testified to in court. And so because of my prior ruling that's why you're stipulating."

We find that the court's statements did not constitute an advisory opinion. Rather, the remarks were made in the context of an evidentiary ruling. The judge even stated that "I don't feel that I should suggest a way for you all to handle it because I would involve myself in the lawsuit." Therefore, we find no evidence of coercion. Defendant is not entitled to relief on this issue.

IV.     Juror Contamination

In his fourth assignment of error, Defendant claims that he was unduly prejudiced by the trial court's comments to the jurors when there was incidental contact between jurors and a third party. He also claims that the trial court's comments were prejudicial and warranted a new trial because they interfered with jury deliberations and hastened the jury's decision on Defendant's charges.

Defendant has waived this issue on appeal by failing to support his argument with authority. Tenn. Ct. Crim. App. R. 10(b). Furthermore, defense counsel failed to raise an objection during trial and instead told the judge "however you want to handle it." Failure to take whatever action is reasonably available to prevent or nullify the harmful effect or error constitutes waiver of the issue on appeal. Tenn. R. App. P. 36(a). Notwithstanding waiver, we will briefly address the merits of Defendant's claim.

While an unexplained conversation between a juror and a third party is sufficient cause for a new trial, Defendant has the initial burden to show proof of more than mere interactions. See State v. Blackwell, 664 S.W.2d 686, 689 (Tenn.1984). In order to shift the burden to the prosecution to demonstrate the harmlessness of the communication, the threshold question is whether the statement communicated to the jury was prejudicial to the defendant. See id.

Defendant has failed to show that the trial court's comments on this extraneous contact were prejudicial and warranted a new trial. The record reveals that during a break in deliberations, four jurors were addressed by a third party who inquired whether they attended the same school and also the length of the lunch break. When brought to the attention of the trial court, the judge conducted a brief hearing where he individually questioned the four jurors. Then, the trial court polled the entire jury to determine if this investigation would affect their impartiality. After finding that there was no improper influence, the court instructed the jury to continue deliberations. This was the

10

extent of the court's inquiry. We find that it was within the court's province to determine whether the extraneous contact prejudiced the Defendant.

Defendant has also failed to show that the trial court's actions spurned a premature verdict. After the hearing, the judge asked the jury if they had reached a verdict in any of the indictments. The jury answered affirmatively, and the court admitted the two verdicts into the record. In open court, the judge read the jury's finding of Defendant's guilt as to resisting official detention and the rape of Ms. Pruitt. The court kept the jackets upon which the two verdicts were written and sent the jury to deliberate on the remaining charge, the aggravated rape of Ms. Olden. The jury returned forty minutes later, finding Defendant guilty of the aggravated rape of Ms. Olden. Aside from mere speculation about the timing of the jury's verdict, Defendant has failed to show any improper influence by the court. Defendant has also failed to show that if undisturbed, the jury might have altered its verdicts or deliberated longer on the final verdict. Therefore, we agree with the State that the contact in issue constituted mere interactions and that the trial court did not err by questioning the jury about the extraneous contact. Likewise, the court did not err by receiving the jury's verdicts separately.

## V.      Admission of Mug Shot Photo

Finally, Defendant argues that it was reversible error to admit a booking photo into evidence that was taken a few days after his arrest. At trial, the State argued, and the court agreed, that because identity was at issue, the photograph was admissible to show how Defendant looked when the rapes were committed. However, Defendant contends that the photograph was inflammatory because it depicted his injuries after his arrest. Further, Defendant argues that the photograph was not probative because the State failed to use them at trial for the purported reason of proving that he "looked different today."

To be admissible, a photograph must be relevant to some issue at trial, and its probative value must outweigh undue prejudicial effect. Tenn. R. Evid. 403; See State v. Banks, 564 S.W.2d 947, 951 (Tenn. 1978). We will not overturn a trial court's decision to admit a photograph absent a clear showing of an abuse of discretion. See Banks, 564 S.W.2d at 949; State v. Lacy, 983 S.W.2d 686 (Tenn. Crim. App. 1997); State v. Zirkle, 910 S.W.2d 874, 888 (Tenn. Crim. App. 1995); State v. Dickerson, 885 S.W.2d 90, 92 (Tenn. Crim. App. 1993).

The trial court did not abuse its discretion by admitting Defendant's photograph. As the proof developed, identity was an issue. Under Cross v. State, 540 S.W.2d 289 (Tenn. Crim. App. 1976), "when a defendant drastically alters his physical appearance either at the time of the crime or later so as to make his identification more difficult, then it is permissible to permit the witnesses to view the defendant as he looked at the time of the crime if this is practical." The photograph was taken when Defendant was arrested, a few days after the rapes occurred. When admitting the photograph, the court remarked that Defendant "looks completely different than in this picture which may explain the I.D.--the lack of I.D. of Ms. Olden."

The photograph was admitted after Officer Johnson testified that Defendant scuffled with police. The trial court also correctly concluded that the probative value of the photograph outweighed any prejudicial effect because there was not "anything in this photograph that's not already in evidence." Defendant is not entitled to relief on this issue.

## CONCLUSION

After reviewing the record as a whole, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE