MoKjnNey, J.,
delivered tbe opinion of tbe court.
Tbe plaintiff in error was indicted in tbe circuit court of Sumner, for tbe murder of Robert IT. Peyton, and on tbe trial, at tbe February Term, 1852, was convicted of manslaughter and sentenced to ten years’ confinement in tbe penitentiary. A motion for a - new trial was overruled, and tbe case is brought to tbis court by an appeal in error.
Tbe record contains a bill of exceptions, in which tbe evidence is set forth, and likewise certain affidavits presented to tbe court on tbe argument of tbe rule for a new trial. Tbe counsel for tbe plaintiff in error have presented several grounds, upon either of which, they insist, a new trial ought to be granted.
It appears from tbe record, that D. P. Hart, then principal sheriff of Sumner county, was prosecutor in tbis case; and upon bis information, tbe warrant issued for arrest of tbe plaintiff in error, on the day of tbe homicide.
It further appears, that, upon a suggestion to tbe ' eourt, by tbe attorney general, of the incompetency of tbe sheriff to summon a panel of jurors, by reason of bis relation to tbe case as prosecutor, tbe prisoner in proper person and by bis counsel waived all exception to bis competency upon that ground; and thereupon tbe sheriff was directed to proceed to summon a panel of jurors for tbe trial of tbe prisoner.
Tbe trial was commenced on Tuesday of tbe term and was concluded on Tuesday of tbe following week. Tbe record shows, that at tbe adjournment of tbe court On the first day of tbe trial, and likewise at tbe adjournment on each succeeding day, the jury were *380 placed in tbe care of a constable, to whom the usual oatb was administered to keep them separate from all other persons and suffer no one to have any communication with them.
The affidavit of William H. King, at the house of whose father the jury boarded and lodged, during the progress of the trial, states that D. P. Ilart, the prosecutor, “ stand with the Jwry, m the same room, the first night after they were empawnelled • a/nd he saw him go to the room of the jwry several times after that, d/wrvng the time they were at the tavern.” To obviate the effect of this disclosure, the affidavit of' said Hart was produced, in which, without in the slightest degree, controverting the truth of the statement made by King, he states, that when in the room with the jury, “he made use of no means, of any sort, to influence the decision of the jury; he never would have went into the jury room if he had not thought it was entirely acceptable to the defendant and his counsel; and affiant was mainly induced to go there at the request of the court; affiant thought all his acts would be acceptable to defendant, after he waived the objection to him or his deputies summoning the jury.”
Hpon the foregoing facts, the question is, whether the conduct of the prosecutor, in intermingling with the jury, constitutes such an irregularity as ought to be held to vitiate the verdict. In considering this question, we must regard Hart simply in the capacity of prosecutor, leaving out of view his official relation and character, as sheriff. By his own voluntary act, in assuming the relation of prosecutor, he thereby disqualified himself, so far as respects this particular case, for the exercise of the proper *381 duties and functions of bis office of sheriff, preliminary to, and connected with the trial of the case.
Ve may leave out of view, also, tire waiver of the sheriff’s incompetency tó summon the jury. Passing by the question, whether the court ought not to have relieved the prisoner from the necessity of making such waiver it is very clear that it could have no operation or effect, except to exclude the prisoner from afterwards objecting that the jurors were not regularly summoned. Whether it ought to be held, even to have that effect, is a question which we need not, in the present case, consider; for, be that as it may, the waiver had reference alone, to the summoning of the pannel of jurors, and neither contemplated, nor extended to any subsequent matter, in the course of the trial.
The simple inquiry, then, is: Can it be tolerated that the prosecutor, may, at his pleasure, associate and hold communication with the jury, during the progress of the trial? And this inquiry, it seems to us, admits of no discussion, if the purity of the trial by jury, be deemed worthy of preservation. If the prosecutor may do so, who may not? May not any stranger to -the prosecution, or any witness in the case, or any relative of the deceased, thus intrude himself upon the jury? It is true, the prosecutor is not, properly speaking, a party to the prosecution; yet he is the party appointed by law, to take all the ■ active steps necessary in order to bring the offender to justice; 1 Ohitty’s Or. Law, 1.
His duty to the public imposes upon him the highest obligations, both of reason and law, to exert in a proper manner the power with which he is invested; IHd, 3. But aside from the motives of duty, his responsibilities are of a nature to inspire him with a feeling of personal *382 interest in tbe result of tbe prosecution. He may be, and frequently is, a witness; his reputation is, in some degree, not unfrequently involved in tbe issue; be is liable to be subjected to tbe costs, in tbe event tbe court should be satisfied that tbe prosecution was either frivolous or malicious; and likewise to an action for damages at tbe suit of tbe injured party.
It certainly would be an unsafe and rash conclusion, that motives so urgent might not exert a powerful influence upon tbe mind of a prosecutor, exempt in an ordinary degree from tbe passions and frailties common to our nature; and what would likely be their influence upon tbe conduct and feelings of one of opposite character’, may be readily conjectured.
But it is said, tbe affidavit of tbe prosecutor establishes that, in this case, no influence prejudicial to the defendant was attempted to be exerted over the'jury; and therefore, tbe irregularity, admitting it to be such, should not be allowed to affect tbe verdict. We do not go the length of bolding that tbe conduct of tbe prosecutor, however censurable, did not admit of explanation; but, in a case apparently so flagrant, tbe explanation ought to be very ample and satisfactory and sufficient to exonerate tbe prosecutor from tbe slightest imputation of either an intention or attempt, to influence tbe jury, directly or indirectly. Tbe affidavit before us, waiving for tbe present tbe question of its admissibility, presents no such full and sufficient explanation. Tbe jury were, during tbe entire progress of tbe trial, under tbe charge of an officer, for whose conduct tbe prosecutor, in bis character of sheriff, was not responsible. Pvwna faoie, therefore, no legal necessity could have existed for tbe interference of tbe prosecutor, as principal officer of tbe *383 court. Under the circumstances of this case, it would not have been competent to the court, unless upon some very extraordinary emergency, to have permitted the prosecutor to mingle with the jury; and if such existed, it ought to have been stated, and cannot be presumed. The strong fact, that the prosecutor remained with the jury all the first night, is not attempted to be explained. Why was he there at all? What motive prompted such a gross intrusion upon the privacy of the jury? and that, too, at so early a period in the progress of the trial; just after the jury had been charged with the case, and when first impressions, not derived from .the evidence, were all the more likely to produce an erroneous and mischievous effect.
The mere negative statement of the prosecutor, that he “made use of no means of any sort to influence the decision of the jury,” amounts to nothing, in the^ absence of a full and explicit explanation, showing, affirmatively, what were his motives and conduct.
The acts charged and not denied, being in gross violation of duty, and the prosecutor having failed to show that they were prompted by innocent motives or that they could not reasonably be supposed to have been productive of mischief to the defendant, the law implies the contrary. It is not required of the defendant to show that, in point of fact, his rights were prejudiced by the unauthorized interference of the prosecutor ; it is sufficient that, from the admitted and unexplained facts of the case, they might heme leen prejudiced.
Upon this ground, the judgment will be reversed and a new trial awarded.