STATE of Tennessee, Appellee,

v.

Ronnie BLACKWELL, Appellant.

Supreme Court of Tennessee,
at Nashville.

Feb. 6, 1984.

Mary Martin Schaffner, Nashville, Jerre M. Hood, Winchester, for appellant.

William M. Leech, Jr., Atty. Gen., David M. Himmelreich, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

FONES, Chief Justice.

This appeal arises out of a decision of the Court of Criminal Appeals affirming the conviction of, and denying a new trial to, defendant Ronnie Blackwell.

Defendant was charged with violation of T.C.A. § 57–142(4) [renumbered T.C.A. § 57–3–406(d)], a misdemeanor, which forbids sale of any alcoholic beverages to a person known to be a minor. He was convicted, fined twenty-five dollars and sentenced to thirty days in jail.

The State adduced proof at trial that an agent of the Tennessee Alcoholic Beverage Commission, Don Earle, observed a female who did not appear to be of age, enter defendant's package store. The suspected minor came out of the store after about five minutes, was approached by the agent, who, after determining the girl was carrying liquor, asked for her identification. Exiting the store right behind the girl was an adult male, Boyd Williams, who voluntarily related to Agent Earle that he had purchased the liquor for the girl. Shortly thereafter, Williams changed his story and stated that the girl had actually made the purchase from defendant. It was determined that the girl was indeed a minor.

Defendant defended on the basis that if there was indeed a sale to the minor, it was at most, inadvertent. Testifying on his own behalf, defendant stated that while he was on the telephone speaking with one of his children, Boyd Williams, who had been in the store conversing with him prior to the phone call, asked for service. He turned around and saw Williams standing at the counter along with a young lady, who had entered the store a few minutes earlier, standing a few paces behind Williams. On the counter was a five dollar bill along with a one-half pint of whiskey. He then exchanged the bottle on the counter for a chilled bottle. He testified that he did not see who picked up the change he had laid on the counter, or, who had picked up the liquor as he had turned his back to put the warm bottle into the refrigerator. After turning around, defendant saw the young lady leaving the store.

Defendant does not assail the sufficiency of the evidence supporting his conviction. The issue raised by defendant that controls the disposition of this case is whether extraneous prejudicial information or any outside influence was improperly brought to bear upon the jury.

Jurors Ethel King and Mary Limbaugh both testified during a motion for new trial that they saw one of their fellow jurors who sat in on the trial of this case with them, later identified as Juanita Smith, talking in the hall with the mother of the minor girl who had bought the liquor in this case. Juror King overheard Smith ask the girl's mother, "What are you doing here?", but did not overhear any more of the conversation. King also testified that, "When we got in the jury room she [Juror Smith] explained who the lady was she was talking to and she said, '. . . that nigger's guilty.'" Jurors Mary Limbaugh and Jo Ann Dotson also testified that upon entry to the jury room they heard the statement ". . . that nigger's guilty." The motion for new trial was overruled.

The Court of Criminal Appeals affirmed, one member of the panel dissenting.

In *Montgomery v. State*, 556 S.W.2d 559 (Tenn.Cr.App.1977) and *State v. Fuino*, 608 S.W.2d 892 (Tenn.Cr.App.1980), it was noted that Federal Rule of Evidence 606(b) was essentially a codification of Tennessee law in respect to the admissibility of juror testimony when the validity of a verdict is challenged and, accordingly, used the rule as the law in Tennessee. Rule 606(b) reads as follows:

> b. Inquiry into validity of verdict or indictment.—Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside

influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

■ Having acquiesced in the application of Rule 606(b) in *Montgomery* and *Fuino*, we now expressly adopt it as the rule governing the exclusion and admissibility of evidence to impeach a jury verdict in this State.[1]

■ The Court of Criminal Appeals reached the conclusion that because Juror Smith quoted no specific information imported to her by the girl's mother, that neither the extraneous prejudicial information exception nor the outside influence exception was invoked. We disagree.

It was clearly established that Juror Smith had a private conversation with a third party who had a vital interest in the outcome of the prosecution adverse to defendant and that as an immediate result of that conversation Juror Smith reached the opinion that defendant was guilty. The inescapable inference conveyed to the jurors who knew Juror Smith had talked to the girl's mother and heard her exclaim defendant's guilt, was that convincing information supporting that conclusion had been conveyed to Ms. Smith. We find from this circumstantial evidence that Juror Smith had an improper contact with the girl's mother during which the merits of this case were discussed.

■ The courts are not in accord as to which of the two exceptions, extraneous prejudicial information or outside influence, permit the admission of evidence that a juror has had contact with a third person about the merits of a case. Compare *Government of the Virgin Islands v. Gereau*, 523 F.2d 140 (3d Cir.1975) with *United States v. Williams*, 613 F.2d 573 (5th Cir.

---

1. The present status of the Tennessee rule with respect to the admissibility of evidence that a jury reached its verdict by virtue of an antecedent agreement to be bound by a quotient gambling or majority result, is expressly not affected by adoption of Federal Rule of Evidence

606(b). *See, Olins v. Schocket*, 31 Tenn.App. 346, 215 S.W.2d 18 (1948); *East Tennessee and W.N.C.R. v. Winters*, 85 Tenn. 240, 1 S.W. 790 (1886); *Glidewell v. State*, 83 Tenn. 133 (1885); *Joyce v. State*, 66 Tenn. 273 (1874) and *Elledge v. Todd*, 20 Tenn. 43 (1839).

1980). It is clearly admissible under one or the other of the exceptions and in this instance we find that Juror Smith's contact with the girl's mother was an improper outside influence that resulted in the transmission of extraneous prejudicial information to the jury.

■ The extraneous influence on a jury can be either fact or opinion. *See Government of the Virgin Islands v. Gereau,* 523 F.2d at 151.

The question remains whether the misconduct of Juror Smith was sufficient to require a new trial.

It has been the law in this State for more than one hundred years that a jury separation or a single juror conversation with a third party that was unexplained was good cause for a new trial. *Brown v. Pippin,* 59 Tenn. 657 (1874), *Davidson v. Manlove,* 42 Tenn. 346 (1865), *McElrath v. State,* 32 Tenn. 378 (1852), and *Riley v. State,* 28 Tenn. 646 (1849). If unexplained, our courts reasoned it cannot be known that the juror was not tampered with and being unexplained the fact that the juror might have been prejudiced is sufficient to require a new trial. In two of the early Tennessee cases, the courts expressly held that it was not encumbent on the defendant to show affirmatively that he was prejudiced by the improper influence received by the jury and invoked a presumption of prejudice. *Ryan v. State,* 97 Tenn. 206, 36 S.W. 930 (1896) and *Sam v. State,* 31 Tenn. 61 (1851).

When evidence of a private extra-judicial communication with a juror is admitted under Rule 606(b) in a criminal matter, the federal courts hold that a rebuttable presumption of prejudice arises and the burden then shifts to the government to explain the conduct or to demonstrate the harmlessness of it. *Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954); *United States ex rel. Tobe v. Bensinger,* 492 F.2d 232 (7th Cir.1974); *Richardson v. United States,* 360 F.2d 366 (5th Cir.1966).

The majority opinion of the Court of Criminal Appeals concluded that the rule applied in *Gonzalez v. State,* 593 S.W.2d 288

(Tenn.1980), that upon a mere showing of the fact of separation of a sequestered jury, the State had the burden of affirmatively showing that no prejudice occurred during the separation was not applicable to a misdemeanor case where the jurors are not separated from the general public. In 1975, the Legislature amended T.C.A. § 40–2528 (renumbered § 40–18–116) the statute that had allowed the trial judge, with the consent of the defendant and the district attorney to have a non-sequestered jury in all criminal cases in which the penalty did not exceed ten years in the penitentiary, by removing the ten year limitation on the statute's applicability and inserting only a death penalty limitation. Since that amendment, the statute has applied to all criminal cases, except death penalty cases, with the result that prior distinctions that assumed misdemeanor cases involved non-sequestered juries and felony cases involved sequestered juries are no longer valid. However, the fact remains that in *Gonzalez* we were dealing with a sequestered jury and in the instant case we are dealing with a non-sequestered jury.

■ We agree with the Court of Criminal Appeals that something more than a bare showing of a mingling with the general public is required where the jury is not sequestered to shift the burden of proof to the State of showing no prejudice. That additional requirement is that as a result of a juror's contact with a third person some extraneous prejudicial information, fact or opinion, was imported to one or more jurors or some outside improper influence was brought to bear on one or more jurors. We have found that the circumstances of Juror Smith's contact with the mother of the girl who purchased the whiskey and the timing of her expression of opinion of defendant's guilt to the other jurors satisfied both triggering requirements.

■ Evidence was offered of remarks made during the jury's deliberation that had racial overtones, the effect of which was said to amount to pressure to vote to convict defendant, a black man. That evidence was inadmissible under the exclusion-

ary language of Rule 606(b), as statements made during the jury's deliberations and the effect thereof upon other juror's minds or emotions.

The judgment of the Court of Criminal Appeals is reversed and this case is remanded to the Circuit Court of Franklin County for a new trial.

COOPER, BROCK, HARBISON and DROWOTA, JJ., concur.