# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JULY 1999 SESSION



**FILED**

**October 6, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 02C01-9812-CC-00365 |
| | ) | |
| vs. | ) | Henderson County |
| | ) | |
| **RUTH STANFORD,** | ) | Hon. Whit Lafon, Judge |
| | ) | |
| Appellant. | ) | (Sale of Schedule III Drug, |
| | ) | Delivery of Schedule III Drug) |

**FOR THE APPELLANT:**
**MARCUS M. REAVES (on appeal)**
Attorney at Law
313 E. LaFayette
Jackson, TN 38301

**HOWARD DOUGLASS (at trial)**
Attorney at Law
P.O. Box 39
Lexington, TN 38351

**FOR THE APPELLEE:**
**PAUL G. SUMMERS**
Attorney General & Reporter

**J. ROSS DYER**
Asst. Attorney General
425 Fifth Ave. North
2d Floor, Cordell Hull Bldg.
Nashville, TN 37243-0493

**JAMES G. (JERRY) WOODALL**
District Attorney General

**BILL MARTIN**
Asst. District Attorney General
Village Square, Ste. M
777 W. Church St.
Lexington, TN 38351

OPINION FILED:_____


**AFFIRMED**

**JAMES CURWOOD WITT, JR., JUDGE**

## OPINION

The defendant, Ruth Stanford, stands convicted of sale of a Schedule III controlled substance and delivery of a Schedule III controlled substance. See Tenn. Code Ann. § 39-17-417 (1991) (amended 1996, 1997) (proscriptive statute); § 39-17-410 (1991) (amended 1996) (scheduled drugs). Stanford received her convictions at a jury trial in the Henderson County Circuit Court. She was sentenced to serve concurrent two-year sentences[1] for these Class D felonies, with the first 90 days to be served in the county facility and the balance to be served on probation. In this appeal, she raises three issues for our consideration:

1. Whether the trial court erred in allowing the testimony of the witness who purchased drugs from Stanford without qualifying the basis of knowledge and reliability of the witness's testimony.

2. Whether the trial court erred in denying a continuance of the hearing on the motion for new trial and ruling on the merits of the motion.

3. Whether the trial court properly sentenced the defendant.

Upon review of the record, the briefs of the parties, and the law, we find no reversible error and affirm the judgment of the trial court.

In the light most favorable to the state, the defendant sold eight dihydrocodeinone pills to Paula Hughes Moody on February 26, 1996. Ms. Moody had pending drug charges and had agreed to work with the local drug task force with the hope of gaining a favorable recommendation at sentencing. Moody had known the defendant for seven or eight years. Moody testified that the nature of their acquaintance was "drugs." Two members of the drug task force, Officer Michael Melton of the Lexington Police Department, and Deputy Greg Hopper of the Henderson County Sheriff's Department, sent Moody to purchase drugs from the defendant. The officers provided Moody with money and a recording device, the

---

[1] See Tenn. R. Crim. P. 32(c)(1) ("Unless it is made to affirmatively appear that the sentences are consecutive, they shall be deemed to be concurrent.") In the case at bar, neither consecutive or concurrent sentences was specified.

latter of which Moody concealed on her person. Moody drove to the defendant's house and purchased drugs from the defendant. Moody returned to the officers' location and provided them with the drugs, the recording device, and the audio tape of the transaction.

## I

In a novel issue, the defendant claims the trial court erred in allowing Moody to testify without first finding that Moody (1) had a basis for knowledge that the defendant was involved in criminal activity, and (2) was credible or her information reliable. In support of this proposition, the defendant cites State v. Marshall, 870 S.W.2d 532 (Tenn. Crim. App. 1993). The defendant concedes that this issue is raised for the first time on appeal but asks that the court take notice of it as plain error.

Generally, issues which were not raised in the trial court will not be considered on appeal. See Tenn. R. App. P. 36(a); see also State v. Adkisson, 899 S.W.2d 626, 636 (Tenn. Crim. App. 1994). If, however, a party seeks relief upon a claim of plain error, the record must demonstrate that a "clear and unequivocal rule of law [has] been breached." Id. at 641.

In the present case, there is no dispute that the issue was not raised below. Thus, the defendant's only potential avenue of relief is via the plain error doctrine. See Tenn. R. Crim. P. 52(b). In her brief, the defendant concedes that the context in which the Marshall court applied the two-pronged test for assessing information from a confidential informant was that of probable cause, not as a prerequisite for allowing the testimony of the informant at trial. The defense has cited no authority for such an extension of the law, and we have found none upon our review. As such, no clear and unequivocal rule of law has been breached, and

3

thus, the plain error doctrine does not afford the possibility of relief to the defendant.

## II

In her second issue, the defendant complains of the trial court's denial of a continuance of the hearing on the motion for new trial and the court's ruling on the merits of the motion. At the beginning of the hearing, the defense notified the court that a subpoenaed witness, one of the jurors from the defendant's trial, had failed to appear. The defense moved for a continuance of the hearing. The court inquired into the nature of the testimony the witness would have given and determined that even if this proof were before it, the court would nevertheless rule against the defendant on the substantive issue. Thus, the court denied the motion for a continuance and the motion for new trial.

According to the defense counsel's argument at the hearing, the defense anticipated offering the juror's testimony that during deliberations he had informed the jury of the defendant's middle name. The defendant's middle name had not been the subject of proof. The defendant's counsel claimed that during the deliberative process the jury had inquired of the court the defendant's middle name. According to counsel, the court declined to give the jury this information. Thereafter, the jury returned guilty verdicts against the defendant. According to defense counsel, the witness/juror would testify that he knew the defendant's middle name from sources outside the proof and provided this information to the other jurors.

Tennessee Rule of Evidence 606(b) governs the competency of a juror to testify in a proceeding in which a party challenges the validity of the jury's verdict. Generally, testimony about matters "occurring during the course of the jury's deliberations" or about "a juror's mind or emotion" in reaching that juror's

4

decision is incompetent. However, testimony about "extraneous prejudicial information . . . improperly brought to the jury's attention," *inter alia*, is competent. Tenn. R. Evid. 606(b). See State v. Blackwell, 664 S.W.2d 686, 688-89 (Tenn. 1984) (in a case decided prior to the adoption of Tennessee Rules of Evidence, court adopts federal Rule 606(b) and distinguishes between federal Rule 606(b)'s "extraneous prejudicial information . . . improperly brought to the jury's attention" and "outside information . . . improperly brought to bear upon any juror").

In Caldararo v. Vanderbilt University, 794 S.W.2d 738 (Tenn. Ct. App. 1990), the appellate court offered guidance as to the scope of information that is included in the "extraneous prejudicial information" exception to the incompetency rule.

> External influences that could warrant a new trial if found to be prejudicial include: (1) exposure to news items about the trial, (2) consideration of facts not admitted in evidence, and (3) communications with non-jurors about the case . . . Internal influences that are not grounds to overturn a verdict include: (1) discussions among jurors, (2) intimidation or harassment of one juror by another, (3) a juror's personal experiences not directly related to the litigation, and (4) a juror's subjective thoughts, fears, and emotions.

Caldararo, 794 S.W.2d at 742 (citations omitted). Embellishing the distinction between "external" and "internal" influences, the court said, "[J]urors are not required to be completely ignorant about a case, and a verdict will not be overturned because of jurors' *generalized knowledge of the parties or of some other aspect of the case.*" Id. at 744 (emphasis added). On the other hand, "[A] juror's personal experiences *directly relating* to the parties or events *directly involved* in the litigation may be [external information]." Id. (emphasis added).

In the case at bar, the information at issue is the defendant's middle name, Helen. Although that information was provided to the court in the presentence report, it was not presented to the jury as a part of the evidence at trial.

5

For purposes of our review in this appeal, the information was imparted to the jury, during their deliberations, by the juror whom the defendant sought to call as a witness at his hearing on the motion for new trial.

Although identity was at issue in the case, and although the possible mention of the name "Ruth Helen" on the undercover tape might in some way assist the state in proving its case if the defendant's name was shown to be "Ruth Helen," a person's name is part of the common knowledge about that person. Indeed, other than a person's appearance, it is difficult to think of any information about that person that is more common than the name by which he or she is known in the community. Knowledge of a person's appearance or name may signify nothing more than knowledge of that person's existence, and we believe this type of information usually fits within the rubric of "generalized knowledge of the parties." See Caldararo, 794 S.W.2d at 744. To be sure, the defendant's representation of the anticipated testimony is utterly devoid of any basis for concluding that the juror's knowledge of the defendant's name emanated from an experience directly related to the defendant or an event involving matters in issue, as opposed to the juror's general, common knowledge. As such, we view the information as being an internal influence and not an external or extraneous influence, with the result that the proposed juror testimony was incompetent. Accordingly, the trial court did not err in overruling this issue in the motion for new trial, and even if it erred in denying the defendant a continuance because of the non-appearance of the proposed witness, the error was harmless. Tenn. R. App. P. 36(b).

### III

Finally, the defendant claims that the trial court improperly sentenced her to split confinement, rather than total probation. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to

6

conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. §40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." Id. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. Id. If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §40-35-210(a), (b) (1997); Tenn. Code Ann. §40-35-103(5) (1997); State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for

alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. §40-35-102(6) (1997). Our sentencing law also provides that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation, shall be given first priority regarding sentences involving incarceration." Tenn. Code Ann. §40-35-102(5) (1997). Thus, a defendant who meets the criteria of section 40-35-102(6) is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption. However, the act does not provide that all offenders who meet the criteria are entitled to such relief; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

With respect to probation as a specific form of alternative sentencing, the burden for establishing suitability for probation remains with the defendant. State v. Bingham, 910 S.W.2d 448, 455-56 (Tenn. Crim. App. 1995). Compare Tenn. Code Ann. § 40-35-102(6) (1997) (presumptive favorable candidates for alternative sentencing) with Tenn. Code Ann. § 40-35-303(a) (1997) (eligible candidates for probation).

In the case at bar, there is no indication in the record that the trial court considered the relevant principles. Thus, our review is *de novo* unaccompanied by the presumption of correctness.

The defendant in the present case comes before the court presumed to be a favorable candidate for alternative sentencing. Moreover, she is eligible for probation. At the time of sentencing, the defendant was 48 years old and employed as a factory worker. She had one prior conviction of aggravated assault from a

**8**

domestic situation which occurred in the mid-1980s, for which she served six years on probation. At the time of sentencing, another drug case was pending against her. She has one minor child who resides with her.

At the sentencing hearing, the judge noted that there was "no question" in his mind that the defendant had been properly identified at trial. This finding stands in stark contrast to the defendant's testimony that she did not commit the offenses and that her voice was not recorded on the tape of the transaction.[2] Implicit in the trial court's statement is a finding that the defendant was incredible. This finding by the trial court is significant to our *de novo* review of the sentencing determination. As this court has observed on many occasions, untruthfulness is a proper basis for denial of probation. See, e.g., State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). Thus, on *de novo* review, it is apparent that the defendant failed to carry the burden of establishing suitability for an entirely probated sentence. As such, the trial court did not err in granting the defendant a partially probated sentence.

Finding no error requiring reversal, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE

CONCUR:

_____

[2]We note that the seller on the audio tape told the buyer that her mother had died the "twenty-seventh of last month." The state's evidence established that the offenses were committed on February 26, 1996. The defendant testified that her mother died on January 27, 1996.

_____
JOSEPH M. TIPTON, JUDGE


_____
JOHN EVERETT WILLIAMS, JUDGE