IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 2, 2004

## ROBERT D. WALSH v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P 26520    Arthur T. Bennett, Judge**

———————————

**No. W2003-02040-CCA-R3-PC  - Filed August 23, 2004**

———————————

The Appellant, Robert Walsh, appeals as of right from the judgment of the Shelby County Criminal Court denying his petition for post-conviction relief.  Walsh was convicted in 1999 of aggravated sexual battery of a foster child who was in his care.  On appeal, Walsh contends that: (1) he was denied the effective assistance of counsel based upon trial counsel's cross-examination of the victim and (2) his right to a fair and impartial jury was violated by a deputy sheriff's comments to the jury during deliberations.  After review of the issues presented, the judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

C. Michael Robbins (at trial and on appeal), Memphis, Tennessee, and William D. Massey (at trial), Memphis, Tennessee, for the Appellant, Robert D. Walsh.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Jennifer L. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Julie Mosley and Lee Coffee, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

In 1998, the Appellant was indicted for aggravated sexual battery and rape of a child.  The jury returned a guilty verdict for aggravated sexual battery and a not guilty verdict for rape of a child.  For his aggravated sexual battery conviction, he received a sentence of ten years to be served at 100%.

On direct appeal, this court affirmed the Appellant's aggravated sexual battery conviction and modified his sentence to Range I service at 30%.  *State v. Robert D. Walsh*, No. W1999-01473-

CCA-R3-CD (Tenn. Crim. App. at Jackson, Jan. 30, 2001), *perm. to appeal denied*, (Tenn. 2001). The relevant facts, as summarized by this court in the Appellant's direct appeal, reflect that:

Around Christmas 1994, the eight-year-old victim[1] and her four-year-old sister were placed as foster children in the home of Robert and Lou Walsh. The victim was unable to provide a precise time frame, but approximately six months later, in the summertime, the defendant had a sexually oriented conversation with the victim in which he told her that it would be permissible under the Bible for him to have sexual relations with her, although it would be wrong for him to have sexual relations with an animal. In her testimony, the victim recounted that "pretty close" in time after this conversation, the defendant rubbed the victim up and down along his body until he ejaculated. The victim testified that after this incident, the defendant asked the victim to touch his private parts "maybe a couple of weeks after he had first done it to me." Over time, the defendant engaged in various acts of fondling the victim, having her masturbate him, and performing oral sex on her. He attempted vaginal penetration on one occasion, anally penetrating her in the process. The victim testified that the defendant said they both would go to jail if she told anyone about the sexual acts. The defendant also told the victim that he would marry her when she was older and his wife was dead, and they would have children together.

In December 1996, the victim and her sister returned to the home of their biological mother. The victim did not report the abuse until approximately eleven months later, and an investigation commenced. During the investigation, the victim gave at least two statements implicating the defendant to child welfare and law enforcement officials.

To counter the state's evidence, the defendant presented proof aimed at showing that the victim was sexually knowledgeable beyond her years as well as untruthful. The defense attempted to highlight alleged inconsistencies between the victim's prior statements and her trial testimony. The defense also presented proof to counter various claims made by the victim, such as that she had been alone with the defendant in his bedroom, that the defendant's wife often slept on the living room sofa and not in the bed with the defendant, that the victim and the defendant were sometimes alone together, that the defendant bathed the victim, and that the victim and the defendant went swimming alone together after dark in the backyard pool.

The defendant testified and flatly denied any sexual misconduct with the victim. Three character witnesses testified on behalf of the defendant before the trial court exercised its discretion to limit further cumulative proof of this nature.

*Id.*

---

[1] It is the policy of this court to avoid use of the names of minor victims of sex crimes.

On June 10, 2002, the Appellant filed a petition for post-conviction relief, wherein he argued that he received ineffective assistance of counsel and he was denied his right to a fair and impartial jury. A hearing was held on May 2, 2003, at which the Appellant, trial counsel, and Linda Busby, a juror at the Appellant's trial, testified. The post-conviction court denied relief by written order on July 29, 2003. This timely appeal followed.

## ANALYSIS

The Post-Conviction Procedure Act, Tennessee Code Annotated sections 40-30-101 to -313 (2003), provides a method by which a defendant may challenge a conviction or sentence for violation of a state or federal constitutional right. Tenn. Code Ann. § 40-30-103 (2003). In order to succeed on a post-conviction claim, the Appellant bears the burden of showing by clear and convincing evidence, the allegations set forth in his petition. Tenn. Code Ann. § 40-30-110(f) (2003).

### I. Ineffective Assistance

First, the Appellant contends trial counsel was ineffective in his cross-examination of the victim. To succeed in a challenge for ineffective assistance of counsel, the Appellant must establish, under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984): (1) deficient representation and (2) prejudice resulting from the deficiency. Thus, the Appellant must prove that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and the Appellant must demonstrate that counsel's errors were so serious as to deprive the Appellant of a fair trial, a trial whose result is reliable. *Id.*

With respect to deficient performance, the Appellant must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). This court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Appellant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation omitted). We should defer to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). Additionally, this court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90.

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)); *see Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However,

*conclusions of law* are reviewed under a purely *de novo* standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

At trial, the following events transpired:

> On cross-examination, the victim was asked several questions about a prior statement she had given to Sergeant [Teresa] White of the Shelby County Sheriff's Department. . . . Later during its case-in-chief, the state called Carol Smith of the Department of the Children's Services to the stand. . . . [T]he court . . . determined that Ms. Smith's testimony regarding the victim's prior statements to her about the [Appellant's] sexual abuse was admissible as prior consistent statements to rehabilitate the victim after her credibility had been attacked on cross-examination. . . . On cross- examination, defense counsel asked for a copy of the tape recording of Smith's interview with the victim. When the witness said she did not have it with her, court was recessed so that the witness could travel to her office to retrieve the tape and so that the defense could review it. When cross-examination resumed, defense counsel inquired at length about variations between the tape and the transcription of it. The witness acknowledged that there were variances and explained that she did not herself prepare the transcribed version. . . . On redirect, the state moved to introduce the tape recording of the victim's interview with Ms. Smith on the basis that the implication from cross-examination was that things had been omitted from the transcription of the tape. . . . [B]efore the tape was played for the jury, the defense objected that "there are things that weren't testified in here that's on the tape." The court overruled the objection, finding that the defense had placed the tape's contents at issue by questioning whether there were inconsistent statements of the victim on the tape. Thereafter, the tape was played for the jury.

*Robert D. Walsh*, No. W1999-01473-CCA-R3-CD. The Appellant argues that, based upon inadequate preparation, trial counsel was under a mistaken impression that a particular portion of the victim's statement was inconsistent, when in fact, it was not. This mistaken impression was the basis of trial counsel's cross-examination of the victim, and directly led to the introduction of Ms. Smith's testimony and the audio tape, thereby, constituting ineffective assistance. He contends that the tape revealed additional instances of sexual misconduct to those testified to by the victim during her direct-examination and, as a result of this prejudice, he is entitled to a new trial.

This Court has noted that "cross-examination is a strategic and tactical decision of trial counsel, which is not to be measured by hindsight." *State v. Kerley*, 820 S.W.2d 753, 756 (Tenn. Crim. App. 1991); *see also Hellard*, 629 S.W.2d at 9. Allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics rarely provide a basis for post-conviction relief. Counsel has some discretion in conducting the defense and is entitled to use his best judgment in matters of trial strategy or tactics. *Taylor v. State*, 814 S.W.2d 374, 378 (Tenn. Crim. App.), *perm. to appeal denied*, (Tenn. 1991) (citing *McBee v. State*, 655 S.W.2d 191, 193 (Tenn. Crim. App. 1983)). Further, we "acknowledge the unique difficulty of cross-examining a child at trial, especially

concerning the sensitive issue of sexual abuse." *Jimmy Greene v. State*, No. E2000-00426-CCA-R3-PC (Tenn. Crim. App. at Knoxville, Mar. 6, 2001).

It is abundantly clear from the record that the defense theory was that the victim was not truthful in her claim of sexual abuse and that portions of her testimony were inconsistent with her prior statements and other evidence. *Robert D. Walsh*, No. W1999-01473-CCA-R3-CD. In closing argument, trial counsel went so far as to use the words "inconsistency" and "inconsistencies" in describing the victim's testimony and her prior statements and argued that the inconsistencies amounted to reasonable doubt. *Id.* Trial counsel's cross-examination of the victim based upon this theory of defense does not fall below "the range wide of professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999).

However, we must address trial counsel's cross-examination of Ms. Smith, which directly led to admission of the audiotape. In the Appellant's direct appeal, this court, in concluding that the trial court did not err in admitting the audiotape of the interview with Sergeant White, observed that:

> In his cross-examination of Ms. Smith, defense counsel inquired in great detail about certain portions of the audiotape which apparently were not transcribed. As part of the effort to demonstrate the victim's purported inconsistencies, defense counsel made much of some matters which were on the tape but not part of the transcription. The mode of counsel's questioning suggested that the transcription was incomplete and somehow misleading. While we do not appreciate the relevance that defense counsel apparently believed existed in the differences between the transcript and the tape of Ms. Smith's interview with the victim, we nevertheless decline to find error in the tape's admission.

*Robert D. Walsh*, No. W1999-01473-CCA-R3-CD. Moreover, this court noted:

> [A]t times counsel's cross-examination about variances between the transcription and the taped statement itself as well as his questioning about particulars of the victim's prior statement took portions of her statement out of their overall context.[2] This court has said that when cross-examination about a prior statement tends to distort the meaning of the statement, the portions of the statement necessary to place the excerpts in context may be introduced. *See State v. Boyd*, 797 S.W.2d 589, 593-94 (Tenn. 1990).

*Id.*

---

[2]Defense counsel laboriously cross-examined Ms. Smith about particulars of the statement. It appears that at times, defense counsel's questioning tended to confuse the witness because counsel asked questions in succession which dealt with unrelated aspects of the victim's prior statement. This mode of cross-examination obfuscated the rehabilitative nature of the witness's testimony on direct about the victim's prior statement.

After having reviewed the audiotape,[3] we, likewise, do not appreciate the relevance that trial counsel apparently believed existed in the differences between the transcript and the tape of Ms. Smith's interview with the victim. The testimony elicited from Ms. Smith by trial counsel during cross-examination did not assist in the Appellant's theory of defense, as it permitted introduction of the audiotape,[4] which was admissible as a prior consistent statement of the victim. *See Crisp v. Duckworth*, 743 F.2d 580, 587 n.8 (7th Cir. 1984). The case centered on the victim's word against the Appellant's. Trial counsel incorrectly assumed that such a "laborious" cross-examination would not lead to admission of the tape. Trial counsel is charged with an understanding of proper trial procedure and rules of evidence. *See Brown v. State*, 877 P.2d 1071, 1073 (Nev. 1994). Moreover, if the purpose of this extensive cross-examination was to show the inconsistencies between the audiotape and the transcript, trial counsel never moved to admit the transcript into evidence. *Robert D. Walsh*, No. W1999-01473-CCA-R3-CD, n. 3.

Although, the Appellant's contention concerning the audiotape does have some merit, its admission was not sufficiently damaging to deprive the Appellant of "a trial whose result is reliable." *Strickland*, 466 U.S. at 687. While we agree with the Appellant that the audiotape contained references to uncharged sexual conduct, the victim testified to most of these instances on direct-examination, as permitted by *State v. Rickman*, 876 S.W.2d 824, 828 (Tenn. 1994). In addition to the testimony concerning the two offenses elected by the State,[5] the victim testified that, approximately fifteen to twenty times, the Appellant "would rub me up against him, against like his private parts." She also testified that he "fingered my private" on one occasion while they were watching television. According to the victim, on more than one occasion, she and the Appellant showered together, and he would wash her "all over" and have her wash "his private part." Additionally, she testified that, once when she and the Appellant were swimming in the pool, "he

---

[3]The Appellant has not included a copy of the tape in the appellate record. At the post-conviction hearing, post-conviction counsel had the original tape in his possession, and the post-conviction court apparently listened to the tape before denying relief by written order. However, the tape was not admitted into evidence in the post-conviction court, as post-conviction counsel stated that it must be returned to this court within thirty days. We are unable to comprehend why post-conviction counsel was unable to have the tape copied or transcribed and authenticated in accordance Rules 902 and 1005, Tennessee Rules of Evidence. Nonetheless, this court may take judicial notice of its records on file, .*i.e.*, the record from the Appellant's direct appeal. Tenn. R. App. P. 13(c); *Givens v. State*, 702 S.W.2d 578, 579 (Tenn. Crim. App. 1985).

[4]As noted on direct appeal, "[t]he tape of the interview Ms. Smith conducted with the victim was a prior consistent statement of the victim. As such it qualified for admission for rehabilitative purposes just as Ms. Smith's testimony did." *Robert D. Walsh*, No. W1999-01473-CCA-R3-CD. However, it was clear that the State did not intend on introducing the audiotape, as the existence of the audiotape was only discovered during trial counsel's cross-examination of Ms. Smith. Moreover, the trial court found that "the defense had placed the tape's contents at issue by questioning whether there were inconsistent statements of the victim on the tape."

[5]The Appellant was indicted in "open-dated" counts for rape of a child and aggravated sexual battery. With regard to rape of a child, the State elected to proceed "on the attempted vaginal penetration that resulted in anal penetration." As to aggravated sexual battery, the State elected to proceed upon the Appellant's act of masturbation, which involved sexual contact of the Appellant by the victim.

would go down there near my private and like lick it or something." Moreover, we cannot ignore the fact that trial counsel's strategy was partially successful, as the Appellant was found not guilty of rape of a child. We conclude that the Appellant did not establish any prejudice resulting from the alleged deficiency. This claim is without merit.

## II. Juror Misconduct

Next, the Appellant argues that a deputy sheriff's comments to the jury during deliberations tainted the verdict and, therefore, he is entitled to a new trial. At the post-conviction hearing, Linda Busby, who served as juror at the Appellant's trial, testified that, during deliberations, a Shelby County Sheriff's Deputy entered the jury room. At that point, the jury had voted unanimously for not guilty on the rape of a child charge. On the charge of aggravated sexual battery, the vote was 11 guilty to 1 not guilty; Juror Busby casting the not guilty vote. Upon the deputy sheriff's arrival into the jury room, one of the jurors told the deputy, who was serving as a court officer, that the jury could not reach a decision. According to Juror Busby, the deputy sheriff responded "almost jokingly or kind of laughed and said you have to or you must or something to that effect. You have to reach a decision." After the deputy sheriff exited the room, deliberations resumed, ballots were again cast, and Juror Busby changed her vote to guilty.

When there is extraneous prejudicial information or any outside influence is brought to bear on a juror, the validity of the verdict is questionable. *State v. Parchman*, 973 S.W.2d 607, 612 (Tenn. Crim. App. 1997). Rule 606(b) of the Tennessee Rules of Evidence prohibits a juror from giving testimony on "any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotion as influencing" his or her vote. Tenn. R. Evid. 606(b); *see also State v. Blackwell*, 664 S.W.2d 686, 689 (Tenn. 1984). However, the rule allows a juror to "testify on the question of whether any extraneous prejudicial information was improperly brought to the jury's attention [or] whether any outside influence was improperly brought to bear upon any juror. . . ." Tenn. R. Evid. 606(b).

If it is shown that one or more jurors has been exposed to extraneous prejudicial information or improper influence, there arises a rebuttable presumption of prejudice, and the burden then shifts to the prosecution to explain the conduct or to demonstrate the harmlessness of it. *Parchman*, 973 S.W.2d at 612; *State v. Young*, 866 S.W.2d 194, 196 (Tenn. Crim. App. 1992). In order to shift the burden to the prosecution to demonstrate the harmlessness of the communication with the jury, the threshold question is whether the statement communicated to the jury was prejudicial to the Appellant. *Parchman,* 973 S.W.2d at 612.

The Appellant asserts that the deputy sheriff's statement to the effect that the jury must "reach a decision" was prejudicial because it impermissibly imparted to the jury the idea that they could not end with a "hung jury." The Appellant argues that the he was deprived of the chance that the jury might have been unable to reach a unanimous decision on the one count for which there was a lone holdout voting not guilty, eliminating the possibility of a mistrial. *Id*. Our supreme court

rejected the use of a jury charge that instructs minority voters to follow the majority voters. *Id.* (citing *Kersey v. State*, 525 S.W.2d 139, 144 (Tenn. 1975)).

In the present case, it is undisputed that an improper communication occurred between the deputy sheriff and the jury. Even if "jokingly," what the deputy sheriff stated to the jury was that they had to reach a verdict. When the improper communication was made, the taint of the jury verdict was presumed. *Id.* at 613. It was then the State's burden to affirmatively show that any contact was harmless. *Id.*

On cross-examination by the State, Juror Busby testified that the jury returned a verdict approximately three hours after the trial concluded. She stated that the deputy sheriff did not coerce the jury, and his comment appeared to be a joke. According to Busby, the comment "made you realize that you did have to make a decision." Busby went on to testify that the comment did not cause her to change her vote from not guilty to guilty, but rather she changed her vote based upon her own independent judgment "following any interchange with the other eleven members of the jury[.]" She stated that "[i]f [she] felt in [her] heart of hearts that [the Appellant] was not guilty of committing any crime, [she] would [not] have voted him guilty just to be in agreement with eleven other people[.]" She also stated that she had served on juries in the past, and she knew that she was not required to change her vote, as a hung jury was a possibility.

The Appellant, relying on the separate concurrence by Judge Smith in *Parchman*, contends that "it was improper for the post conviction court to consider the testimony of Ms. Busby regarding her deliberative process." *See id.* at 615 (Judge Smith concludes that the misconduct of the juror and the bailiff resulted in prejudice to the judicial process and required a new trial even though the misconduct in all probability did not alter the results of the trial). In *Parchman*, the majority concluded that the State failed to carry its burden to affirmatively show that the contact was harmless. *Id.* at 614. However, the majority indicated,

> It would have been possible to call the juror to testify whether they were influenced by the statement relayed to them by the male juror. Also, the male juror could have confirmed that the statement made by the bailiff was not prejudicial, and this juror could have testified as to what statement he then made to the remaining jurors.

*Id.*

We are unable to perceive of how the State would be able to rebut the presumption of prejudice if the State were not permitted to have Juror Busby testify as to how the statement influenced her. Accordingly, we conclude that the post-conviction court properly considered the testimony of Juror Busby. Moreover, the State has carried its burden in showing the harmlessness of this communication.

## CONCLUSION

Based upon the above analysis, we affirm the judgment of the post-conviction court denying the Appellant post-conviction relief.

_____
DAVID G. HAYES, JUDGE