IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

JULY 1999 SESSION

**FILED**

**October 6, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 02C01-9812-CC-00365 |
| | ) | |
| | ) | Henderson County |
| v. | ) | |
| | ) | Hon. Whit Lafon, Judge |
| | ) | |
| RUTH STANFORD, | ) | (Sale of Schedule III Drug, |
| | ) | Delivery of Schedule III Drug) |
| Appellant. | ) | |

**CONCURRING OPINION**

I concur in the majority opinion, except I view the juror issue somewhat differently. First, I believe that the juror's proffered testimony relates to a fact not in evidence, i.e., the defendant's middle name, that does not fall within the juror's generalized knowledge. This information could easily relate to the case because the central issue was the identity of the drug seller.

Under the majority opinion's analysis, as a fact not in evidence, it constituted an external influence. This means that, procedurally, it was to be presumed prejudicial, and the burden fell upon the state to rebut the presumption. See State v. Young, 866 S.W.2d 194, 196 (Tenn. Crim. App. 1992); State v. Blackwell, 664 S.W.2d 686, 689 (Tenn. 1984); see also Remmer v. United States, 347 U.S. 227, 229-30, 74 S. Ct. 450, 451 (1954). Thus, the trial court would have erred by not allowing the defendant the opportunity to have the juror testify.

However, I would uphold the trial court because I do not believe that the record supports a conclusion that the fact not in evidence was an improper influence

upon the jury. The record in this case reflects that the defendant does not contend that the juror learned the defendant's middle name during the trial stage. Instead, she assumes that the juror had pretrial knowledge of her middle name. In this respect, I believe that a distinct difference exists when the juror having particular knowledge of events related to the case is totally honest during voir dire and the defendant has a full opportunity to question the juror about that knowledge. Under such circumstances, the fact that the defendant failed to question the juror fully before accepting him or her as a trial juror is of no consequence. Acceptance of the jurors effectively constitutes the parties' consent that the jurors, with all their knowledge and experiences, will decide the case. See, e.g., United States v. Rigsby, 45 F.3d 120, 125 (6th Cir. 1995). If such were not the rule, it would be difficult to select juries, particularly in rural venues.

> The twentieth century American jury has moved a long way from its medieval origins. Today's juror must be "indifferent" and "[h]is verdict must be based upon the evidence developed at the trial." Still we would not lightly assume that the jury's original role as the voice of the country may not sufficiently persist that neither the specific guarantees of an impartial jury and of confrontation nor the more general one of due process would be violated simply because jurors with open minds were influenced to some degree by community knowledge that a defendant was "wicked" or the reverse, even though this was not in evidence. One, although by no means the only, purpose of the insistence on trial in the vicinage both in Article III, § 2, and in the Sixth Amendment, must have been to entitle a defendant to trial where he is known–and this may sometimes work against him rather than in his favor. Indeed there are still sections of the country where it might be impossible to find twelve jurors who were totally ignorant about a defendant.

United States ex rel. Owen v. McMann, 435 F.2d 813, 817 (2d Cir. 1970) (citations and footnote omitted).

Absent a showing that a potential juror failed to disclose facts after questioning that should reasonably elicit those facts, I would hold that dissemination of those facts to other jurors during deliberations would not be improper. In the present

case, nothing indicates that the juror was not candid during voir dire. Therefore, I see no juror impropriety.

_____
Joseph M. Tipton, Judge