IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 17, 2021 Session

## HOWARD BURNETT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 94159      Scott Green, Judge**

### No. E2020-00697-CCA-R3-PC

The petitioner, Howard Burnett, appeals the denial of his petition for post-conviction relief, which petition challenged his conviction of first degree murder, alleging that he was deprived of the effective assistance of counsel. Because the petitioner failed to show that he was prejudiced by trial counsel's representation, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Joshua D. Hedrick, Knoxville, Tennessee, for the appellant, Howard Burnett.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Charme P. Allen, District Attorney General; and Leslie Nassios, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

A Knox County Criminal Court jury convicted the petitioner of first degree murder for the shooting death of the victim, Eric Clark, and the trial court imposed a life sentence. *State v. Howard W. Burnett*, No. E2007-01788-CCA-R3-CD, 2008 WL 4613531 at *1 (Tenn. Crim. App., at Knoxville, Oct. 1, 2008).

The evidence at trial showed that, on the evening of May 26, 2005, the petitioner, the victim, and "a large group" were hanging out in the parking lot of the Ridgebrook Apartments in Knoxville. The petitioner left the parking lot after becoming angry at the victim for flirting with the petitioner's girlfriend. Soon after the petitioner left, the petitioner's friend, Jerome Goines, became "extremely upset because some men from

across town had threateningly flashed their weapons at [Mr.] Goines while driving through the Ridgebrook complex." *Id.*

The petitioner returned to the parking lot upon Mr. Goines' request because Mr. Goines "wanted to take some action against the men from across town. The victim opposed this plan and had apparently persuaded [Mr.] Goines to hand over his gun." *Id.* Mr. Goines and the petitioner argued with the victim about the gun, and, eventually, the "victim angrily le[ft] the parking lot . . . , driving in the direction of [his] residence," and Mr. Goines and the petitioner "wandered down the hill away from the parking lot area." "The victim returned [15] to [20] minutes later . . . . carrying an open bottle of beer and had a .38 caliber revolver in each of his back pockets." The victim began searching for the petitioner and Mr. Goines, "finding them only when they returned to the parking lot area a few minutes later." *Id.*, at *1-2.

The petitioner, Mr. Goines, and the victim "began to argue again." *Id.* at *2. At some point, the argument "became violent" and escalated into a shoving match. "Soon after" the fight broke out, the petitioner

> fired [11] rounds, in what might be characterized as three stages. First, he fired eight rounds into the victim's torso in rapid succession as the victim ran from him in an attempt to take cover behind a nearby car. . . . These injuries caused the victim to fall onto his back. He continued to move slightly in an effort to escape.
>
> Next, the [petitioner] walked a few feet to the victim's location, stood over him, and fired two additional rounds into the victim's head. In addition to . . . testimony that the victim was moving as the [petitioner] walked over to him, [the Knox County Medical Examiner, Doctor Sandra Elkins] testified that the large quantity of blood released from the resulting head wounds indicated that the victim still had relatively high blood pressure, and he was thus still alive at the time the [petitioner] shot him in the head. . . .
>
> Finally, the [petitioner] fired once into the air, threateningly yelling "did anyone see anything?" [Mr.] Goines, meanwhile, had started the [petitioner's] car. The [petitioner] sat down in the passenger seat, and the two drove off.

*Id.* at \*2.

The petitioner filed a timely petition for post-conviction relief. After the appointment of counsel, the petitioner filed an amended petition,[1] alleging that he was deprived of the effective assistance of counsel.

At the February 19, 2020 evidentiary hearing, trial counsel testified that he was appointed to represent the petitioner after the petitioner's original attorney withdrew. Trial counsel stated that the State had extended a plea offer when the petitioner was represented by prior counsel and that the petitioner had rejected that offer. Trial counsel said that the State indicated that it would be willing to renegotiate a plea agreement with trial counsel. The parties did not reach an agreement, however, and the case proceeded to trial. Counsel stated that he worked with the petitioner's prior attorney in preparing for trial and that he obtained all the discovery materials. Counsel also said that he visited the crime scene, interviewed witnesses, and talked with Mr. Goines' attorney about Mr. Goines' potential testimony. Counsel explained that his defense strategy was to argue that the petitioner shot the victim in defense of a third person.

Trial counsel acknowledged that the court officer "tasked with interacting with the jury and securing the jury" answered a question from a juror regarding the order in which the jury could consider lesser included offenses "if they couldn't agree on the greatest charge." Counsel recalled that, after the trial court learned that the court officer had provided an incorrect statement of the law in responding to the juror's question, the trial court brought the jury back into the courtroom prior to the jury's reaching a verdict. The trial court instructed the jury that "[t]hey had to be unanimous on the first degree murder" charge "before they could acquit" on that charge. Regarding his failure to move for a mistrial at that time, counsel stated, "I thought I had moved for a mistrial and if I didn't, I would have now, and I couldn't tell you why I didn't at that time."

In its written order denying post-conviction relief, the post-conviction court found that, although the trial court bailiff incorrectly instructed the jury as to the order in which they must consider the offenses, the trial court "promptly and correctly instructed the jury on the law and corrected the bailiff's erroneous instruction," and, consequently, that a mistrial was not warranted.

In this timely appeal, the petitioner reasserts his claims of ineffective assistance of counsel, arguing that trial counsel performed deficiently by failing to move for a mistrial after the bailiff's improper communication with the jury.

---

[1] Because the petitioner was appointed three different attorneys over the course of the post-conviction proceedings, he filed three amended petitions, the third of which incorporated all the claims raised in the prior petitions.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Although we agree with the petitioner that trial counsel's failure to move for

a mistrial amounted to deficient performance, under the circumstances of this case, the petitioner has failed to establish that he was prejudiced by counsel's conduct.

A criminal defendant is guaranteed a right to a trial "by an impartial jury." U.S. Const. amend. VI; Tenn. Const art. 1, § 9. "When a jury has been subjected to either extraneous prejudicial information or an improper outside influence, the validity of the verdict is questionable." *State v. Adams*, 405 S.W.3d, 641, 650 (Tenn. 2013) (citing *State v. Blackwell*, 664 S.W.2d 686, 688 (Tenn. 1984)). When a defendant establishes "that a juror was exposed to extraneous prejudicial information or subjected to improper influence, a rebuttable presumption of prejudice arises, and the burden shifts to the State to explain the conduct or demonstrate that it was harmless." *Walsh v. State,* 166 S.W.3d 641, 647 (Tenn. 2005). This burden shifting to the State to rebut the presumption of prejudice that a defendant was deprived of his right to an impartial jury, however, does not alleviate the post-conviction petitioner of his burden to establish the prejudice prong of *Strickland* in an ineffective assistance of counsel claim. *See Strickland*, 466 U.S. at 694.

The record here supports the trial court's finding that the bailiff improperly instructed the jury as to the order in which they must consider offenses; however, the petitioner put forth no evidence at his evidentiary hearing to establish that a motion for mistrial would have been granted. Indeed, had trial counsel moved for a mistrial, the petitioner would have benefited from the rebuttable presumption of prejudice. Even so, the State would have then had the opportunity to rebut that presumption. Our supreme court identified four factors to determine whether the State meets its burden to overcome the presumption of prejudice in such circumstances:

> (1) the nature and content of the information or influence, including whether the content was cumulative of other evidence adduced at trial; (2) the number of jurors exposed to the information or influence; (3) the manner and timing of the exposure to the juror(s); and (4) the weight of the evidence adduced at trial.

*State v. Adams*, 405 S.W.3d 641, 654 (Tenn. 2013).

At his evidentiary hearing, the petitioner did not call any juror or other witness to testify to the "nature and content" of the bailiff's statement, the number of jurors exposed to the bailiff's statement, or the "manner and timing" of the bailiff's statement. The trial record does not indicate the specific content of the bailiff's statement, the number of jurors exposed to the information, or how long the jury relied on the bailiff's statement before the trial court gave a curative instruction. Because the petitioner has failed to put forth any evidence that these factors supported a granting of a motion for mistrial, he has

not shown that he was prejudiced by trial counsel's failure to move for mistrial.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE