# IN THE COURT OF APPEALS OF TENNESSEE AT NASHVILLE
## September 3, 2020 Session

## TENNESSEE DEPARTMENT OF HEALTH, ET AL. v. CHRISTINA K. COLLINS, RN, APRN

### Appeal from the Chancery Court for Davidson County
### No. 18-492-IV, 18-494    Russell T. Perkins, Chancellor

_____

### No. M2019-01306-COA-R3-CV

_____

This appeal involves a licensure disciplinary action. The Tennessee Board of Nursing charged an advanced practice registered nurse with overprescribing controlled substances. After a contested case hearing, the Board found the nurse practitioner guilty of violations of Tennessee's nursing rules. However, during the deliberations of the Board, one member conducted her own research. She observed that her findings had "changed her mind" and shared the information with the other panel members. The Board subsequently imposed a much-reduced sanction than what was sought by the State. After the administrative law judge twice denied the State's motions for mistrial, the parties filed appeals with the chancery court. Upon review, the trial court determined that the procedural errors in the record, including the introduction of extrinsic prejudicial information, constituted an abuse of discretion that affected the merits of the Board's decision. The court reversed and remanded the matter for a new contested case hearing to be heard before and deliberated by a different Board panel. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and THOMAS R. FRIERSON, II, J., joined.

Eric C. Vinsant, Birmingham, Alabama, for the appellant, Christina K. Collins.

Herbert H. Slatery, III, Attorney General & Reporter, Sara E. Sedgwick, Sr. Asst. Attorney General, and Kyle C. Mallinak, Asst. Attorney General, for the appellees, Tennessee Board of Nursing and Tennessee Department of Health.

## OPINION

## I. BACKGROUND

Christina K. Collins ("Ms. Collins") is licensed as a registered nurse ("RN") and an advanced practice registered nurse ("APRN") in Tennessee. The Tennessee Board of Nursing ("the Board") is authorized to discipline licensed nurses for violations of its nursing rules.[1] On August 10, 2016, the Tennessee Department of Health ("State"), on behalf of the Board, filed a notice of charges against Ms. Collins, which included allegations regarding her care of twelve patients. The State later filed amended charges that shortened the timeframe to 2011 through 2012 (eleven patients). According to the State, Ms. Collins "use[d] an APRN license and DEA[2] registration to essentially act as a wholesaler to drug dealers, abusers, and addicts." The State claimed that Ms. Collins violated provisions of the Board's rules and regulations by overprescribing controlled substances, narcotics, and other medications in amounts and/or for durations not medically necessary, advisable, or justified for a diagnosed condition and without appropriate record-keeping or documentation of the medical rationale for her prescribing habits.[3]

### Motion to Exclude

Ms. Collins filed a motion to exclude the testimony of the State's proposed expert, Alison R. Anderson ("Ms. Anderson" or "the Expert"). Ms. Anderson is an APRN with a master's degree who was first licensed in 2005. She has worked in the area of pain management since at least 2008.[4] The State asserted that the Expert had reviewed all the charts of the eleven patients identified in the charges and had provided a lengthy and detailed report. According to the State, the Expert's testimony would be based on her "training and experience."

Ms. Collins alleged that Ms. Anderson was not qualified to serve as an expert witness in this matter because she was not familiar with the standard of care in Knoxville, lacked familiarity with the standard of care existing in 2011 and 2012,[5] and because her opinions were not based on scientifically valid evidence. According to Ms. Collins, the Expert utilized prescribing guidelines that were put in place in January 2015 when

---

[1]Tenn. Code Ann. § 63-7-101, *et seq.*; Rules of the Tennessee Board of Nursing, Tenn. Comp. R. & Reg. 1000-1.01, *et seq.*

[2] Drug Enforcement Administration.

[3]The State contends that Ms. Collins was the ninth most prolific prescriber of opioids in Tennessee from January 1 to June 30, 2012.

[4]At the time of the contested case hearing, she was continuing her education at Vanderbilt in a Ph.D. program.

[5]Interestingly, Ms. Collins's expert witness testified that "it's hard to nail down what standard of care is because it's constantly changing."

reviewing the 2011-2012 patient records, and her opinions were not backed up by scientific evidence existing in 2011 and 2012. Ms. Collins further claimed that the Expert was unwilling or unable to provide relevant grounds for each of her opinions during the deposition. According to Ms. Collins, Ms. Anderson referenced her "impression" of how things were in 2011 and 2012, but admitted on several occasions that she did not actually know. Ms. Collins contends that the Expert related that her opinions were based in part on what her supervising physicians have told her in the past but that she could not point to anything that they provided to her or what the supervising physician was relying upon in suggesting things be done in a particular way. Ms. Collins noted that Ms. Anderson referred to no reference materials, scientific data, or guidelines, other than those she purportedly relied upon from 2015. Ms. Collins asserted that the testimony of another APRN as to what that APRN personally would/would not do cannot establish the standard of medical practice.

The State responded with an affidavit from Ms. Anderson expressing her familiarity with the standard of care in Knoxville[6] and referencing her work experience in the field of pain management. The State observed that Ms. Anderson is an APRN, the same profession as Ms. Collins, licensed during the relevant period, who worked as a main provider in a pain management clinic in 2011 and 2012. According to the State, the Expert is familiar with the types of drugs used for the treatment of chronic pain.

Upon holding a telephonic hearing on the motion to exclude on June 13, 2017, the administrative law judge ("the ALJ") ruled as follows:

> I'm very much not wanting to shut down something before we even hear what it is. So we're going to deny the motion to exclude the testimony of the State's witness. . . . It would be difficult for me to put it in an order that the State is required to back up testimony when, first of all, we don't know exactly what she is going to testify to. . . . As an advanced practice nurse, she's going to have an opinion on these things. And whether or not – now, if what she says is, you know, way out there in left field, then you can cross that up on cross-examination. Then by all means, go for it. Or what [State's counsel] just said, I believe, if you have studies that you can

---

[6]Despite Ms. Collins's argument that the Expert has not complied with the locality rule, that rule is no longer applicable in cases before the Board. On May 2, 2017, Governor Bill Haslam signed Public Chapter No. 240, which abolishes the locality rule in professional licensure disciplinary cases. In *Shipley v. Williams*, 350 S.W.3d 527 (Tenn. 2011), the Tennessee Supreme Court rejected the proposition that an expert witness needs "firsthand" and "direct knowledge" of the standard of care in the same community or a similar community as the defendant. *Id.* at 554. Furthermore, the record reflects that Ms. Anderson was generally familiar with the Knoxville area.

present to her and say, Well, this is in direct contradiction to what you're testifying to, then that's all fair game. But to exclude her testimony, that's not fair game. And then to also require the State to provide some kind of reports when they're not exactly sure what they would be required to provide, I don't think we can do that either.

The ALJ's order held: "[I]t is DETERMINED that there is no legal basis to exclude Ms. Anderson's testimony. Ms. Anderson will be permitted to testify as to the appropriate conduct of an Advanced Practice Registered Nurse in the field of pain management."

## Motion for Summary Judgment

Ms. Collins thereafter filed a motion for summary judgment on July 24, 2017, in which she alleged that the State had not produced admissible evidence of the standard of care in this case. As she had asserted in the earlier motion, Ms. Collins argued that Ms. Anderson could not point to specific studies, research, guidelines, medical literature, or other materials supporting the opinions she espoused in her report or expressed at the deposition. Ms. Collins contended that no evidence had been produced by Ms. Anderson or the State to establish an essential element of the State's claim—the standard of care. The State responded that it intended "to prove that Ms. Collins's care of her patients fell below the standard of care by putting on the expert testimony of Alison Anderson." On August 23, 2017, after a short hearing, the ALJ denied the summary judgment motion, stating:

> Okay. . . . [W]e are going to deny the respondent's motion for summary judgment in this matter and go forward. The legal basis is that we've already said that Ms. Anderson can testify in this matter, and . . . I don't believe that the State has to produce some document that states what the standard of care is. I think she's going to establish that during her testimony, which, of course, you're going to be able to cross on. So, I don't see why it wouldn't be allowed.

Ms. Collins's counsel immediately requested an interlocutory appeal of the issue, which the ALJ denied.

## Contested Case Hearing

The contested case hearing before the Board began immediately after the summary judgment hearing, and testimony continued over multiple days for nearly six months. The Board listened to over 50 hours of testimony and reviewed thousands of pages of evidence.

At the hearing, Ms. Anderson testified that "the standard of care is what a minimally competent person should do." She elaborated:

> [F]or instance, for pain, you've got to have evidence for a cause of pain, which may include imaging, physical exams, things like that. You've got to have a plan of treatment that's clear. You've got to use clinical reasoning. You need a reason for what you do. You can't just treat someone randomly without some sort of reason and justification for why you're doing it.

She claimed "the basis of her knowledge as an expert [was derived] from all of her training, from the conferences she had attended, the reports that she'd read, and her extensive practice in pain management and other fields," and that "all of that experience formed the basis of her expert opinion." Ms. Anderson specifically clarified that, although the State's "Chronic Pain Guidelines" were not published until after the time period implicated in the case, a standard of care did exist in Tennessee in 2011 and 2012, and that she did *not* hold Ms. Collins to the standards established in the later-published guidelines. However, the Expert declared that Ms. Collins fell below the standard of minimal competency and that her care fell below the applicable standard of care.

During the deliberations by the Board after the close of proof, panel member Janell Cecil indicated "that Ms. Anderson was inconsistent and provided conflicting answers."[7] Panel member Brent Earwood observed that Ms. Anderson got "flustered" because "[s]he wasn't able to provide" answers to support her opinions. Panel member Lee Ann Stearnes and Ms. Cecil both commented that proof of the 2010 guidelines should have been presented to them for review. An overnight break was required in the deliberations. Upon reconvening, Ms. Stearnes expressed:

> [T]his has been weighing heavy on our minds. We want to get this right. We have been here for many days and heard a lot of stuff. One of the things that has bothered me is that we have not heard any cited evidence. So I went and found it.

She discussed that she had reviewed information from the American Pain Society's journal.[8] She mentioned other articles that "pretty much is saying the same thing" and related some of the matters reviewed. Another panel member added: "Some people hear the dosing without hearing the testimony and the days and hours and weeks of stuff we've heard, they're going to say, there's no doubt she overprescribed." To which, Ms. Stearnes

---

[7]Similar criticisms were made regarding the testimony of Ms. Collins's expert witness.

[8]February 2009, volume 10, issue 2, pages 113 through 173. Ms. Stearnes observed that the article indicated that the doses at issue in this case "were currently accepted practice at that time."

responded: "And that was my very first impression until I read this data."

The State moved for a mistrial, alleging that Ms. Stearnes's opinion regarding whether Ms. Collins engaged in overprescribing changed as a result of her research. The State argued that the reliance on extrinsic information changed the minds of the panel members about the issues, affected the deliberations and tainted the decision, including the sanction. According to the State, the information resulted in the Board imposing a much-reduced sanction than the one proposed by the State.

Ms. Collins's counsel responded that questioning about these guidelines had ensued previously during the State's case. He argued, therefore, that no detriment to the State arose from the additional information.

The ALJ denied the State's motion, explaining his decision as follows:

> They don't have to put their knowledge of the subject out of their minds. That's why they're on this board. . . . "It's denied. We're going to continue with this. Like you said, you can bring it up on appeal, if you want. There's nothing that stops her. We don't – she would have done that research for her own career or her own job. Anyway, she is also an advanced practice nurse, I believe, or something similar. So, again, there's – we checked – during the pendency of this hearing, we checked all kinds of treatises and reports and listened to experts. There's absolutely no bias of her going to look up something that [Ms. Collins] was questioned over. She is allowed to look that up.

The State's attorney rejoined: "[Ms. Stearnes] specifically, said it changed her opinion, and when we're not given a chance to contest what the evidence is when she misreads evidence or reads evidence in isolation, which is not brought before, we don't have a chance to [contest] it."

After the panel members completed their review, the Board ruled that it could not "[f]ind by a preponderance of the evidence that [Ms. Collins's] prescribing to the Patients fell below the standard of care of an ordinary and prudent [APRN] practicing in the area of pain management in 2011 and 2012." It did find that Ms. Collins's "documentation fell below what this Board believes is called for by the Rules of the Board of Nursing, particularly in light of the complexity of the treatments provided to the Patients." The final order required two years of probation plus civil penalties, costs, and additional education.

The State made a second motion for mistrial, arguing that the Board was not permitted to rely on outside materials. It further claimed that the ALJ had failed to give a

corrective instruction to the Board panel that it should disregard the extrinsic information. The ALJ again denied the request, finding in part:

> In my denial, I'm saying that is the type of information that an APRN would rely on, and clearly, in my board charge, I said they don't have to put aside their knowledge in their particular field, and an APRN would find out what dosing guidelines were. That was part of the crux of the argument that . . . what Ms. Collins did was an acceptable practice at the time. The State's—the Respondent's witness said that, clearly, in his testimony. So this was basically just confirmation, which—I mean, I don't even know what she looked up, but I don't think it was changing their opinion.

Both the State and Ms. Collins filed petitions for judicial review.

The trial court reversed the Board's final order and remanded the matter for further proceedings to include a new contested case hearing to be conducted by a different Board panel. The court specifically found:

> [T]he Board panel's exposure to extraneous information cannot be considered harmless. In this case, the extraneous evidence is clearly prejudicial and its importation into the Board's deliberations was sufficient to amount to prejudicial misconduct as a matter of law. The "evidence" was not admissible to prove the standard of care and was never subjected to any testing or cross-examination by the Department. Further, the Board's consideration of and reliance on this extrinsic information undermined the fundamental fairness of the contested case hearing. The independent research on which the Board relied was not made part of the record, such that both parties and this Court are left unaware about exactly what extrinsic information the Board panel reviewed. Moreover, medical articles or treatises are not admissible as substantive evidence.
>
> The Board panel must render its decision based on the evidence introduced at the contested case hearing. As such, the Court finds that the Board panel's decision was made upon unlawful procedure and was characterized by an abuse of discretion—or a clearly unwarranted exercise of discretion—due to the improper injection of extrinsic evidence by Ms. Stearnes. When a decision is influenced by extraneous prejudicial

information, a new trial must be granted.

(Internal citations and footnote omitted). The trial court further determined that the application of Rule 68 of the Tennessee Rules of Civil Procedure[9] to this case would violate the State's sovereign immunity. Ms. Collins thereafter filed this timely appeal.

## II. ISSUES

Ms. Collins raises the following issues on appeal:

> 1. Whether the trial court erred in upholding the ALJ's denial of Ms. Collins's motion for summary judgment by not reviewing the issue *de novo* and by applying facts presented during the contested case hearing.
>
> 2. Whether the trial court erred in granting the State a new trial before a new Board panel because the Board's decision was not based on extraneous prejudicial information.
>
> 3. Whether the trial court erred in finding that Rule 68 of the Tennessee Rules of Civil Procedure did not apply to the State under the principle of sovereign immunity.

## III. STANDARD OF REVIEW

Judicial review of decisions by administrative agencies following contested case hearings is governed by the Uniform Administrative Procedures Act ("UAPA"), Tenn. Code Ann. § 4-5-322(a)(1). Trial and appellate courts use the same standard of review. *Gluck v. Civil Serv. Comm'n*, 15 S.W.3d 486, 490 (Tenn. Ct. App. 1999). A court is limited to determining whether the rights of a petitioner have been prejudiced because the

---

[9]Rule 68 provides as follows: "At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property, or to the effect specified in the offer, with costs then accrued. Likewise a party prosecuting a claim may serve upon the adverse party an offer to allow judgment to be taken against that adverse party for the money or property or to the effect specified in the offer with costs then accrued. If within 10 days after service of the offer the adverse party serves written notice that the offer is accepted, either party may file the offer and notice of acceptance, together with proof of service thereof, with the court and thereupon judgment shall be rendered accordingly. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree shall pay all costs accruing after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer."

administrative findings and conclusions are:

> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5) (A) Unsupported by evidence which is both substantial and material in the light of the entire record.
> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h). "No agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision." Tenn. Code Ann. § 4-5-322(i). Review is confined to the record made before the agency. *Metro. Gov't of Nashville and Davidson Cnty. v. Shacklett*, 554 S.W.2d 601, 604 (Tenn. 1977). The decision of a state agency is not arbitrary and capricious if there is any rational basis for the conclusions. *MobileComm of Tenn., Inc. v. Tenn. P.S.C.*, 876 S.W.2d 101, 104 (Tenn. Ct. App. 1993) (citation omitted). Judicial review of an administrative decision is exhausted when a rational basis for the decision is found. *Blue Ridge Transp. Co. v. Pentecost*, 343 S.W.2d 903, 906 (Tenn. 1961).

A reviewing court must accord appropriate judicial deference to agency fact-finding; it is not permitted to reweigh the evidence. *See Humana of Tenn. v. Tenn. Health Facilities Comm'n*, 551 S.W.2d 664, 667 (Tenn. 1977); *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279 (Tenn. Ct. App. 1988). Because of the expertise of members of boards and commissions, courts customarily defer to adjudicatory determinations made by administrative agencies acting within their area of specialized knowledge, experience, and expertise. Accordingly, the courts do not substitute their own judgment for that of a board or agency with regard to the weight of the evidence. *Martin v. Sizemore*, 78 S.W.3d 249, 269 (Tenn. Ct. App. 2001) (citations omitted).

## IV. DISCUSSION

### A. Expert Opinion

Ms. Collins asserts that the trial court erred in neglecting to fully review the ALJ's pretrial ruling regarding the admission of the Expert. Additionally, Ms. Collins contends that the court reviewed the ALJ's denial based on evidence presented at the contested case hearing; thus, she argues that the court's decision was based on improper factual grounds.

She requests that we review the ALJ's decision to admit Ms. Anderson as an expert witness based on the facts and law applicable to the case at the time the motion was heard.

Ms. Collins contends that the ALJ abused his discretion when he made no effort to evaluate Ms. Anderson's qualifications or proposed testimony beyond her licensure as an APRN. According to Ms. Collins, with regard to qualifications, the ALJ must determine that Ms. Anderson is an expert either through knowledge, skill, experience, training, or education, in the area in which she is providing testimony. Tenn. R. Evid. 702.[10] Ms. Collins claims that the courts "must analyze the science and not merely the qualifications [of the expert]." *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 265 (Tenn. 1997). She contends that "[t]o qualify as an expert under [the applicable rule], a witness should have a 'thorough knowledge of the subject matter of his or her testimony,' *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 443 (Tenn. 1992), and some special as well as practical acquaintance with the immediate line of inquiry," *Martin*, 78 S.W.3d at 273 (citation omitted).

Questions regarding the qualifications, admissibility, relevancy, and competency of expert testimony are matters left within the broad discretion of the trial court. *See McDaniel*, 955 S.W.2d at 263-64; *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993). On appellate review, the trial court's ruling shall not be overturned absent a finding that the trial court abused its discretion in admitting or excluding the expert testimony. *Ballard*, 855 S.W.2d at 562. "[A]n appellate court should find an abuse of discretion when it appears that the trial court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997). *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 230 (Tenn. Ct. App. 1999). The Tennessee Supreme Court has explained that a court "must assure itself that the [expert's] opinions are based on relevant scientific methods, processes, and data, and not upon an expert's mere speculation." *McDaniel*, 955 S.W.2d at 265.

The State contends that Ms. Anderson has extensive experience in pain management, has been the main provider in a pain management clinic, and has attended pain conferences and continuing education courses related to pain. It observes that the Expert has worked with complex pain patients both in standard pain management clinics and integrative clinics. According to the State, the Expert's experience in that specialty qualifies her to offer her opinions. The State declares that the Expert testified during her deposition that the standard of care is determined by the scientific community relying on a body of evidence that they agree is reasonably reliable. She relates that she derived her understanding of the standard of care from the rules in place, the statutes and rules

---

[10]Rule 702 provides: "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise."

regarding what is required of a professional nurse in Tennessee, her experience in school, and what she has learned. The State contends that there was no need for Ms. Anderson to somehow bolster her expert opinion as to the standard of care with journal articles or "scientific evidence."

The trial court affirmed the ALJ's qualification of Ms. Anderson as an expert:

> ALJ Wilson did not make any determination that the underlying facts and data in Ms. Anderson's testimony indicated a lack of trustworthiness. Further, the record does not reflect that the underlying facts and data in Ms. Anderson's testimony indicated any lack of trustworthiness. The record is clear that Ms. Anderson possessed the knowledge, skill, experience, training and education to qualify as an expert witness under Tenn. R. Evid. 702 and that she presented trustworthy facts and data "reasonably relied upon by experts in the particular field." Tenn. R. Evid. 703.[11] Accordingly, the Court finds that ALJ Wilson did not abuse his discretion when he qualified Ms. Anderson as an expert witness and when he denied Ms. Collins' motion to exclude her as a witness and her motion for summary judgment based on the same objections.

The evidence, much of it available before the contested case hearing, supports the determination made by the ALJ that the Expert was qualified to testify to the work of an APRN involved in the pain management practice area. The record further demonstrates that Expert possessed the knowledge, skill, experience, training and education to qualify as an expert witness pursuant to Rule 702. She maintained sufficient knowledge of the subject matter of her testimony and some special and practical acquaintance with the immediate line of inquiry—her work through the years practicing as an APRN in various pain management clinics or other pain management areas of practice. Tenn. R. Evid. 703. Accordingly, the evidence supports the trial court's determination that the ALJ did not abuse his discretion when he qualified Ms. Anderson as an expert witness.

## B. <u>Summary Judgment</u>

---

[11]Rule 703 provides: "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. . . . The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness."

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "[T]he evidence must be viewed in a light most favorable to the claims of the nonmoving party, with all reasonable inferences drawn in favor of those claims." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 286 (Tenn. 2015). The moving party may satisfy its burden of production "(1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Id.* at 264. The nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). It must demonstrate the existence of specific facts in the record that could lead a rational trier of fact to find in favor of the nonmoving party. *Rye*, 477 S.W.3d at 265.

A court reviews a summary judgment motion *de novo* without a presumption of correctness in the trial court's decision. *Id.*, 477 S.W.3d at 250 (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). We review the summary judgment decision as a question of law. *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004).

Ms. Collins reiterates that we must focus on the evidence at **the summary judgment stage**, not on hypothetical evidence that theoretically could be adduced in the future. *Rye*, 477 S.W.3d at 265. Thus, at the time of summary judgment, we must review and determine: 1) whether the State came forward with evidence on all essential elements, and 2) if so, whether that the evidence is admissible.

Ms. Collins was alleged to be unfit or incompetent by reason of negligence, habits or other cause, or guilty of unprofessional conduct for prescribing in a manner inconsistent with the *Official Compilation Rules and Regulations of the State of Tennessee*, Tenn. Comp. R. & Reg. 1000-04-.08, regarding the treatment of pain, and Tenn. Comp. R. & Reg. 1000-04-.09 regarding prerequisites to prescribing or dispensing medication as an APRN. These allegations involve whether Ms. Collins's conduct complied with the applicable standard of care. As such, it was necessary for the State to present proof of the requisite standard of professional practice as well as how Ms. Collins deviated from those standards. In *Williams v. Tennessee Bd. of Med. Exam'rs*, No. 01A01-9402-CH-00060, 1994 WL 420910 (Tenn. Ct. App. 1994), we held that an administrative agency could not simply rely on its own expertise and that articulating the applicable standard of care was necessary to enable the courts to evaluate the materiality and substantiality of the evidence

presented to prove the alleged violations.[12] *Id.* at \*8. "[D]isciplinary proceedings generally require licensing agencies to compare the performance of the [medical professional] who is the subject of the proceeding with the minimally acceptable level of performance in similar circumstances by similar practitioners in the licensing jurisdiction." *Tennessee Dep't of Health v. Frisbee*, No. 01A01-9511-CH-00540, 1998 WL 4718, at \*6 (Tenn. Ct. App. Jan. 9, 1998). *Frisbee* provides that the State is required to present expert testimony: 1) identifying the applicable standards of practice; 2) explaining the source of these standards; 3) identifying the classification of medical professionals to which these standards apply; and 4) explaining how the medical professional deviated from these standards. *See id.*

Ms. Collins argues that Ms. Anderson, at her deposition, could not point to specific studies, research, guidelines, medical literature, or other materials supporting the assertions in her report as to the standard of care. Ms. Collins notes that the State, likewise, failed to produce any documents or materials to substantiate Ms. Anderson's opinions. In particular, Ms. Collins observes that Ms. Anderson could not testify about the standard of care because "there hasn't been any foundation laid to establish that she has knowledge regarding the standard of care." Ms. Collins's counsel related:

> I deposed Ms. Anderson . . . to try and get the information that I'm requesting, and asked her, okay, well, what's the basis for this, what are you relying on?
>
> And, you know, her answers were, well, very clearly I don't know, but I just feel like that that might have been the case.
>
> Not it's based on this medical literature, or it's based on, you know, the materials that I received when I was doing continuing education or whatever it might be.

According to counsel for the State, Ms. Collins's counsel:

> [i]s essentially stating that there must be a document to which the State can point that explicitly states the standard of care, such as a scientific article. The whole point of standard of care is that it's not as easy as one document; it's more subtle than that. It's something that we do need an expert to testify to because it cannot be pointed to explicitly to state X, Y, Z must happen for the standard of care to be met.

---

[12]Tennessee Code Annotated section 63-1-122, which became effective on May 2, 2017, now codifies the statewide standard of minimal care and competence applicable to disciplinary actions against all healthcare practitioners.

- 13 -

> There are not rules written for every facet of every specialty in medicine and in nursing. It involves professional judgment. It involves professional judgment of what's reasonable and professional judgment of what's dangerous.
>
> In a malpractice case, if an OB/GYN had an incident occur and a patient ended up with a dead child, an expert would come in to testify as to whether or not the standard of care had been met with regard to the actions of that physician in those particular circumstances.
>
> * * *
>
> In a malpractice matter, an expert's testimony is derived from their experience, from their experience working in the field, dealing with similar situations, and using that professional judgment to determine whether something was reasonable, whether it was dangerous, whether it was appropriate.[13]

The State argues that, regardless of the year, the standard of care does not allow prescribing lethal doses of drugs to patients in order to "treat" the pain of those patients. The State's proof was that Ms. Collins prescribed outrageous quantities of medications that no patient could actually take, that she did nothing to document any medical reasoning for this prescribing, that she knew or should have known that she was supplying drugs to patients involved in narcotic diversion, and that she ignored innumerable warning signs that her patients were drug seeking and non-compliant. According to the State, Ms. Anderson's testimony regarding these matters was reliable and based on her own experience as applied to the facts of this case.

Ms. Collins further argues that the trial court applied an incorrect legal standard in reviewing the ALJ's denial of her pretrial motion for summary judgment—applying an abuse of discretion standard (applicable to review of decisions concerning qualification of expert witnesses) instead of a standard of *de novo* with no presumption of correctness (applicable to review of denials of summary judgment motions). Additionally, Ms. Collins charges that the trial court assessed the ALJ's ruling based on facts presented at the contested case hearing and not solely on the facts contained in the record at the time of summary judgment. She argues that summary judgment should have been granted to her

---

[13]State counsel's explanation is not inconsistent with the language of "accepted scientific knowledge of the treatment of pain" referenced in Tenn. Comp. R. & Regs. 1000-04-.08(4)(c). Counsel added that Ms. Anderson "testified during her deposition that the standard of care is determined by the scientific community relying on a body of evidence that they agree is reasonably reliable."

prior to the contested case hearing being held.

According to the State, Ms. Collins simply parlayed her failed motion to disqualify the Expert into a summary judgment motion made on the same grounds. Because the gravamen of both motions was Ms. Collins's objection to the ALJ's qualification of Ms. Anderson as an expert, the State contends that the trial court properly reviewed both motions together, under an abuse of discretion standard, and found "that ALJ Wilson did not abuse his discretion when he qualified Ms. Anderson as an expert witness and when he denied Ms. Collins's motion to exclude her as a witness and her motion for summary judgment based on the same objections." The State claims, however, that substantially similar evidence—including Ms. Anderson's expert report, deposition testimony, and affidavit—were also presented prior to the contested case hearing in the context of the State's opposition to Ms. Collins's summary judgment motion. Thus, the State argues that the trial court's analysis was, at worst, harmless error.

A *de novo* review of the record reveals that the State presented proof identifying the relevant standards of care at the time of summary judgment in the form of the Expert report and the deposition testimony. As to the report, Ms. Collins contends that it is not admissible as evidence for any purpose because it does not fall into any of the categories listed in Rule 56 of Tennessee Rules of Civil Procedure: It was not made under oath, affirmation, or penalty of perjury, or even signed by the Expert. Neither is it a pleading, deposition, answer to an interrogatory, answer to a request for admission, or an affidavit. Ms. Collins claims, therefore, that it does not constitute one of the ways that a party may establish specific facts in the record to show that there is a genuine issue of material fact on summary judgment. Tenn. R. Civ. P. 56.04, 56.06. Ms. Collins asserts that the document constitutes hearsay and is, therefore, inherently untrustworthy. She further contends that Ms. Anderson's report lacks the requisite foundation under Rule 703 of the Tennessee Rules of Evidence to be admissible. According to Ms. Collins, permitting opposition to summary judgment to be based on evidence that would not be admissible at trial undermines the goal of the summary judgment process to prevent unnecessary trials because inadmissible evidence could not be used to support a jury verdict. *Rye*, 477 S.W.3d at 257 (citing *Byrd v. Hall*, 847 S.W.2d 208, 215-16 (Tenn. 1993)); *see also Shipley*, 350 S.W.3d at 564-65.

We find that the State presented evidence of an essential element of its claim. Even if the report is disallowed, the deposition testimony was of record at the time of summary judgment. It sufficiently identified the applicable standards of practice, explained the source of those standards, identified the classification of health care practitioners to which these standards apply (APRN), and explained how Ms. Collins deviated from those standards. As Ms. Collins failed to negate an essential element of the State's claim and a genuine issue of material fact remained, the ALJ's ruling on summary judgment was not improper.

## C. Extraneous Prejudicial Information

Ms. Collins asserts that the trial court erred in granting the State a new trial before a new panel because the Board's decision was not based on extraneous prejudicial information. According to Ms. Collins, the information raised by the panel member was not extraneous because it did not establish any new facts or information not already in evidence or testified to during the trial. Ms. Collins asserts that, in this case, there are countless hours of testimony from witnesses regarding dosing and prescribing of controlled substances for pain. At least with regard to the specific document cited by Ms. Stearnes from the American Pain Society, Ms. Collins declares that there is testimony in the record indicating that it formed the basis of questions from the Board to Ms. Collins during the State's case-in-chief, as well as the basis of opinions from Ms. Collins's expert during her case without objection. Ms. Collins claims that when the same facts as those being attacked are put into evidence and presented to the jury by a party or his counsel, that information cannot be said to be extraneous. *State v. Hailey*, 658 S.W.2d 547, 553 (Tenn. Crim. App. 1983).

The information complained of by the State is not contained in the record. What we know about it is contained in the transcripts of the Board's deliberations. The ALJ found no prejudice to the State and determined that the information was cumulative. Ms. Collins contends that the trial court exceeded its authority in finding that "the extraneous evidence is clearly prejudicial and its importation into the Board's deliberations was sufficient to amount to prejudicial misconduct as a matter of law." She argues that the ruling of the ALJ must be upheld and the trial court's order overturned and the Board's final order reinstated. The burden is on the State to show that the extraneous information is prejudicial.

The State asserts that the extrinsic information introduced by a panel member during Board deliberations prejudiced the State and affected the merits of the Board's decision. The State argues that the specific documents referred to by the Board member had themselves not been introduced as evidence in the proceeding and were "not admissible to prove the standard of care." According to the State, "[s]imply because the Board panel considered other evidence concerning pain management during the course of the hearing does not mean that the extrinsic information Ms. Stearnes 'looked up' was the same as evidence previously introduced." The State notes that Ms. Stearnes's own statement that "we have not heard any cited evidence. So I went and found it" belies this assertion. According to the State's attorney, "[Ms. Stearnes] specifically said it changed her opinion, and when we're not given a chance to contest what the evidence is when she misreads evidence or reads evidence in isolation, which is not brought before, we don't have a chance to [contest] it."

The State contends that the trial court properly found that the introduction of the information constituted an abuse of discretion or a clearly unwarranted exercise of discretion that affected the merits of the Board's decision. It declares that the trial court

- 16 -

correctly reversed and remanded the matter for a new contested case hearing to be heard and deliberated by a different panel.

Ms. Collins additionally argues that Rule 606(b) of the Tennessee Rules of Evidence prohibits introduction of juror testimony concerning the effect on the juror of extraneous information arising during deliberations. She argues that 606(b) prohibits the consideration by a court of the Board's discussion of the proof and Ms. Stearnes's extrinsic "evidence" during its open deliberations. Rule 606(b) of the Tennessee Rules of Evidence provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotions as influencing that juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion; nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Pursuant to the rule, a juror is not permitted to testify about anything occurring during deliberations, including the juror's own internal thoughts, motivations, or emotions. Tenn. R. Evid. 606(b); *State v. Blackwell*, 664 S.W.2d 686, 688 (Tenn. 1984). The rule does, however, make an exception in three circumstances, allowing juror testimony if there has been: (1) **extraneous prejudicial information**, (2) outside influence, or (3) an antecedent agreement to be bound by a quotient or majority result. Tenn. R. Evid. 606(b); *Cavalier Metal Corp. v. Johnson Metal Controls*, 124 S.W.3d 122, 127 (Tenn. Ct. App. 2003) (emphasis added). Rule 606(b) permits juror testimony to establish the fact of extraneous information or improper influence on the juror; however, juror testimony concerning the effect of such information or influence on the juror's deliberative processes is inadmissible. *Walsh v. State*, 166 S.W.3d 641, 649 (Tenn. 2005).

Under the facts of this case, the exception regarding extraneous prejudicial information is applicable. In contrast to jury deliberations, which are private, the matter before us involves a Board's deliberations, which were open to public observation. Tenn. Code Ann. § 4-5-312(d) ("The hearing shall be open to public observation . . . ."). Thus, we must find that the 606(b) restrictions do not extend to this situation.

As noted by the Tennessee Supreme Court:

> Jurors must render their verdict based only upon the evidence introduced at trial, weighing the evidence in light of their own experience and knowledge. When a jury has been subjected to either extraneous prejudicial information or an improper outside influence, the validity of the verdict is questionable. Extraneous prejudicial information has been broadly defined as information "coming from without." More specifically, extraneous prejudicial information is information in the form of either fact or opinion that was not admitted into evidence but nevertheless bears on a fact at issue in the case.

*Tennessee v. Adams*, 405 S.W.3d 641, 650 (Tenn. 2013) (quoting *Tennessee v. Coker*, 746 S.W.2d 167, 171 (Tenn. 1987); *Caldararo v. Vanderbilt Univ.*, 794 S.W.2d 738, 743 (Tenn. Ct. App. 1990); *Blackwell*, 664 S.W.2d at 688-89. "External influences that could warrant a new trial, if found to be prejudicial include . . . consideration of facts not admitted in evidence." *Caldararo*, 794 S.W.2d at 742 (citing *Government of Virgin Islands v. Gereau*, 523 F.2d 140, 149-50 (3d Cir. 1975); *United States v. Blackston*, 547 F. Supp. 1200, 1217 (S.D. Ga. 1982)).

In *Martin v. Opryland USA, Inc.*, No. 01-A-01-9412-CV-00567, 1995 WL 322632, at *1-4 (Tenn. Ct. App. May 26, 1995), this court ordered a new trial in a situation similar to the matter of extraneous information at issue in this case. In that matter, a nurse on the jury did independent research and shared the results of her research with the other jurors during deliberations. *Id.* at *1. Another juror stated that this information influenced her decision. *Id.* This court found that this extraneous information was prejudicial because the jury relied on the information, and that a new trial was required. *Id.* at *2-3. Courts have found no choice but to order new trials when extrinsic information is used by a jury to reach its verdict. *See State v. Smith*, 418 S.W.3d 38, 49-50 (Tenn. 2013); *Walsh*, 166 S.W.3d at 649-50; *Blackwell*, 664 S.W.2d at 689-90. Thus, where outside evidence is used by the trier of fact to reach its decision and one of the parties is prejudiced thereby, the decision has been improperly obtained and a new trial is required.

The court correctly found that the ALJ's denials of the State's motions for mistrial constituted an abuse of discretion:

> The Board panel must render its decision based on the evidence introduced at the contested case hearing. . . . As such, the court finds that the Board panel's decision was made upon unlawful procedure and was characterized by an abuse of discretion—or a clearly unwarranted exercise of discretion—due to the improper injection of extrinsic evidence by Ms. Stearnes.

- 18 -

> When a decision is influenced by extraneous prejudicial information, a new trial must be granted.

(Citation omitted). Further, the court properly determined: "[I]n this case . . . the extraneous evidence is clearly prejudicial and its importation into the Board's deliberations was sufficient to amount to prejudicial misconduct as a matter of law." Where outside evidence is used by the trier of fact to reach its decision and one of the parties is prejudiced by it, the decision has been improperly obtained and a new trial is required. Accordingly, we must affirm the decision of the trial court that reversed and remanded the Board's final order, both because it was made upon unlawful procedure, and was characterized by an abuse of discretion or clearly unwarranted exercise of discretion. Tenn. Code Ann. § 4-5-322(h).

## D. **Rule 68**

Ms. Collins claims the trial court erred in finding that the State may not have the costs of an action taxed against it as provided for under Rule 68 of the Tennessee Rules of Civil Procedure.

On August 9, 2017, Ms. Collins made an offer of judgment in accordance with the provisions of Rule 68 of the Tennessee Rules of Civil Procedure, which the State rejected. Ms. Collins argues that because the final order of the Board was less punitive than the offer of judgment she submitted, the State must pay all costs accruing after the making of the offer. The State contends that Ms. Collins was found to have violated the Board's laws and rules and was disciplined, including an assessment of a civil penalty that exceeded the amount of the penalty Ms. Collins offered in her offer of judgment made under Rule 68. The "costs" in Rule 68 are only "costs taxed by the Clerk of the Court" and do not include attorney's fees. *Groves v. Ernst-Western Corp.*, M2017-01779-COA-R3-CV, 2018 WL 3600015 (Tenn. Ct. App. July 26, 2018). The State claims that Ms. Collins conflates her request for costs pursuant to Rule 68 with her request for attorney's fees and costs under Tennessee Code Annotated section 4-5-325.

As the judgment has been reversed and this matter is being remanded for further proceedings, this issue is not ripe for review. At this stage, Ms. Collins cannot establish the applicability of Rule 68, which arguably implicates the State's sovereign immunity. Application of Rule 68 to an administrative disciplinary proceeding would not be based on any underlying statutory authority.

Additionally, as the trial court correctly noted, the parties to an administrative disciplinary contested case proceeding cannot themselves resolve a pending contested case—that authority belongs to the Board alone, which must approve/ratify and such an agreement. Tenn. Comp. R. & Regs 1360-04-01-.19; Tenn. Code Ann. §§ 63-7-115(a) (1) and (b); 63-7-207(10).

Tennessee Code Annotated section 4-5-325 permits a hearing officer, ALJ, or the judge of a reviewing court to award the reasonable expenses incurred because of a citation issued by a board for violation of a rule, regulation or statute if the officer or judge finds the citation was issued:

> (1) Even though, to the best of such agency's knowledge, information and belief formed after reasonable inquiry, the violation was not well grounded in fact and was not warranted by existing law, rule or regulation; or
>
> (2) For an improper purpose such as to harass, to cause unnecessary delay or cause needless expense to the party cited.

Tenn. Code Ann. 4-5-325(a). The award of the expenses is not contingent on the success or failure of a party at the contested case hearing. *Id.* This court has indicated that "a proceeding brought with the utmost good faith may result in an award of attorneys' fees to the cited party if the citation was not well grounded in fact and not warranted by existing law." *American Child Care, Inc. v. State*, 83 S.W.3d 148, 152 (Tenn. Ct. App. 2001).

Ms. Collins claims that the alleged violations by the State were not well grounded in fact and were not warranted by existing law, rule, or regulation. She argues that the Board found the State had not met its burden of proving that Ms. Collins's prescribing fell outside the standard of care. The State disputes that it brought charges against Ms. Collins for any improper purpose or that the violations alleged were not well grounded in fact and regulation. In our view, the trial court's remand of this matter to the Board for a new contested case hearing to be heard and determined by a different panel makes any determination under this statutory provision premature.

## V. CONCLUSION

We affirm the judgment of the trial court. The case is remanded for such further proceedings as may be necessary and consistent with this opinion. Costs of the appeal are assessed to the appellant, Christina K. Collins.

_____
JOHN W. MCCLARTY, JUDGE

- 20 -